The CITY OF
SHENANDOAH, Appellant,

v.

JIMMY SWAGGART EVANGELISTIC
ASSOCIATION, Appellee.

No. 09–88–185 CV.

Court of Appeals of Texas,
Beaumont.

Feb. 22, 1990.

Rehearing Denied March 14, 1990.

Michael J. Darlow, Prappas & Darlow, P.C., Houston, for appellant.

James W. Bradford, Jr., Angleton, for state appellee.

## OPINION

WALKER, Chief Justice.

This is a suit for the collection of delinquent ad valorem taxes brought by the appellant against the appellee for tax years 1980 through 1987, inclusive, on real property owned by appellee, and for tax years 1981–1987, inclusive, on personal property owned by appellee. On March 21, 1988, the case was tried to a jury. The appellant made a prima facie showing of tax delinquency on appellee's part for the years 1980 through 1987, inclusive, without objection. Appellee then presented its case which was grounded on the claim that one-half of its real property and all of its personal property was exempt from taxation as the said property was utilized for religious worship. This evidence was not objected to by the appellant. One special issue was presented to the jury for its determination; that being the percentage of appellee's property (both real and personal) that was entitled to an exemption from taxation based on appellee's claim that most of the property in question was utilized for religious worship. *See*, TEX.TAX CODE ANN., sec. 11.20 (Vernon Supp.1989). The jury found that 50% of the real property and 100% of the personal property was exempt from taxation. The trial court accepted the jury's findings and entered judgment for appellee. On appeal, the appellant enumerates eighteen points of error allegedly committed by the trial court. As we will explain in the opinion, we will consider only the points of error (ten through sixteen) that focus on issues concerning tax years 1980 and 1981. As for tax years 1982 through 1987, inclusive, we feel that none of appellant's points of error correctly complains of the error committed by the trial court. As we feel that this error was fundamental, we are considering it as unassigned error.

This Court recognizes that the manner for determining disputes between a taxing entity and a taxpayer is covered in the TAX CODE, ch. 41 which deals with administrative review of appraisal records by the appraisal review board. TEX.TAX CODE ANN., ch. 41 (Vernon Supp.1989). Chapter 41 sets out strict procedures for taxpayers to follow in order to successfully protest various issues dealing with their tax as-

sessment. Once a taxpayer has fully complied with the procedures listed in Chapter 41, and the party is still dissatisfied with the final administrative ruling, the party *then* can avail itself of Chapter 42 of the TAX CODE, which deals with judicial review of the administrative order. TEX.TAX CODE ANN., ch. 42 (Vernon Supp.1989). Both Chapters 41 and 42 became effective on or before January 1, 1982. Before applying the provisions of Chapters 41 and 42 to the facts of the instant case, a survey of the background of the case is in order.

The appellant commenced this suit on March 31, 1981 to collect the delinquent taxes owed by appellee for the year 1980. The law in effect in 1981 was TEX.REV. CIV.STAT., Title 122 (1925) (repealed 1980 and 1982). Article 7336(b) in Title 122 set the delinquency date at February 1. TEX. REV.CIV.STAT., art. 7336(b) (1925) (repealed 1982). The present TAX CODE took full effect in 1982, and it provides that the date taxes become delinquent is February 1. TEX.TAX CODE ANN., sec. 31.02 (Vernon 1982). Appellant then filed a "First Amended Original Petition" on November 5, 1982 to include the tax year 1981 in its attempt to collect delinquent taxes allegedly owed by appellee. A "Second Amended Original Petition" was filed June 13, 1983 to include tax year 1982, and a "Third Amended Original Petition" was filed June 29, 1984 to include tax year 1983. Appellee's "Original Answer" was filed August 4, 1983, and was in the form of a general denial.

On August 30, 1984, appellant filed a motion for summary judgment, essentially alleging that appellee raised no fact question in the "Original Answer", and attached to the motion an affidavit from the Tax Assessor Collector of the City showing the delinquent amounts due from years 1980 through 1983, inclusive. Up to that point in time, it is undisputed that appellee had not made any payment to anyone to discharge the assessment, nor does the record indicate any attempt to protest the assessment for the years 1980 and 1981. Under the old provisions in Title 122, taxpayers had the right to appeal to a district court. However, the *only issue* allowed to be determined was whether or not the value of the property in question, as ascertained by the board of equalization, was in error. TEX.REV.CIV.STAT., art. 7345f, sec. 4(a) (1977) (repealed 1982). What appellee attempted to do was to have the Montgomery County Appraisal District declare appellee "tax exempt" as being a "religious organization". Thus, on April 26, 1982, appellee submitted its first and only application for tax exempt status for the 1982 tax year to the Appraisal District. The application was denied. It appears from the record that the appellee filed a notice of protest, as required under sec. 41.44 of the TAX CODE, with the Appraisal Review Board. Thereafter, the record reflects that the Appraisal Review Board denied the appellee's appeal, and appellee timely filed a notice of appeal as required under sec. 42.06 of the TAX CODE and shortly thereafter, on October 22, 1982, filed "Taxpayer's Original Petition for Review of Exemption Denial and of Assessment" in cause number 35585 in a Montgomery County District Court, styled *Jimmy Swaggart Ministries v. Montgomery County Appraisal District, and Montgomery County Appraisal Review Board.* All of this was done in a strict and timely manner, and in such a way as to demonstrate to this Court that appellee was well aware of the rigid procedural requirements that Chapters 41 and 42 set out.

■ Among the many provisions listed in Chapters 41 and 42 of the TAX CODE are those in sections 42.08 and 42.09. Section 42.08 is entitled, "Forfeiture of Remedy for Nonpayment of Taxes", and reads as follows:

(a) The pendency of an appeal as provided by this chapter does not affect the date taxes become delinquent.

(b) A property owner who appeals as provided by this chapter must pay the tax due on the amount of value of the

property involved in the pending action that is not in dispute or the amount of tax paid on the property in the preceding year, whichever is greater, but not to exceed the amount of tax that would be due under the order from which the pending appeal was taken, before the delinquency date or he forfeits his right to proceed to a final determination of the pending action.

(c) Upon the motion of a party, the court shall hold a hearing to review and determine compliance with this section. If the court determines that the property owner has not substantially complied with this section, the court shall dismiss the pending action. If the court determines that the property owner has substantially but not fully complied with this section, the court shall dismiss the pending action unless the property owner fully complies with the court's determination within 30 days of the determination.

Section 42.09 is entitled, "Remedies Exclusive", and reads as follows:

(a) Except as provided by Subsection (b) of this section, procedures prescribed by this title for adjudication of the grounds of protest authorized by this title are exclusive, and a property owner may not raise any of those grounds:

(1) in defense to a suit to enforce collection of delinquent taxes; or

(2) as a basis of a claim for relief in a suit by the property owner to arrest or prevent the tax collection process or to obtain a refund of taxes paid.

(b) A person against whom a suit to collect a delinquent property tax is filed may plead as an affirmative defense:

(1) if the suit is to enforce personal liability for the tax, that the defendant did not own the property on which the tax was imposed on January 1 of the year for which the tax was imposed; or

(2) if the suit is to foreclose a lien securing the payment of a tax on real property, that the property was not located within the boundaries of the taxing unit seeking to foreclose the lien on Jan-

uary 1 of the year for which the tax was imposed.

(c) For purposes of this section, "suit" includes a counterclaim, cross-claim, or other claim filed in the course of a lawsuit.

During the trial of the instant case, the appellee called Mr. Hardy Brundage to the stand to testify. Mr. Brundage was identified as the station manager of the radio station that was the "property" involved in the delinquent tax suit. During the course of direct examination, appellee's attorney elicited the following testimony from Mr. Brundage:

Q. Okay. Back to the original question, has it always been the position of the radio station that we owed taxes on the bottom portion of the building?

A. Yes, sir, that's correct.

Q. From day one now, well, let's go back to the critical years at least, '80, '81 and '82, it has always been the position of the Ministries that we owed money on that portion, isn't that correct?

A. That is correct.

Moments later, on cross-examination, appellant's attorney elicited the following from Mr. Brundage:

Q. On the financial statement for those three years, there is no listing for payment of taxes as an expense, is there?

A. No, sir, there was not, because we did not pay taxes for those three years.

Q. Now you just testified that it has always been the position of Jimmy Swaggart Ministries, that they owed some portion of taxes on that property. My question to you, sir, is then, why did you wait six years to tender any money?

A. Well, because the, it was still a matter of litigation and it had not gone to trial and so we, for that reason, did not take action at that point until it was determined what should be done.

It is indeed true that appellee tendered money in an attempt to satisfy its delinquent tax status, but much too late for TAX CODE purposes. Appellee tendered

$6,106.80 on March 10, 1987, and $22,821.98 on March 3, 1988. Based on the statutory delinquency date of February 1, and even giving appellee the benefit of the doubt that the March 10, 1987 payment was for the 1986 tax year, and the March 3, 1988 payment included the 1987 tax year, both payments were still delinquent. Furthermore, Mr. Brundage's testimony is unequivocal in its explanation that appellee had no intention of paying *anything* so long as litigation was pending even though appellee was fully aware that it owed some tax on a portion of its building. This evidences a clear violation of Sec. 42.08 of the TAX CODE, quoted above. Section 42.08 requires that the protesting taxpayer must *at least* pay the tax due that is not in dispute, or the amount paid the previous year, whichever is greater. Since appellee never paid any taxes on the real or personal property, it was still required to remit the undisputed portion in order to be allowed to proceed to a final determination of its appeal for Sec. 42.08 purposes. The record in the instant case does not reflect the status of appellee's suit against the Appraisal District and Appraisal Review Board except for a footnote in appellant's brief which states that the case was apparently settled without a trial, and the suit dismissed. Regardless of the outcome of that suit, our decision in the instant case for tax years 1982–1987, inclusive, is based solely on Sec. 42.09.

█ By the clear language of Sec. 42.09, the procedures provided by the TAX CODE for having a district court adjudicate a ground of protest by a taxpayer are exclusive. Appellee's suit against the Appraisal District and Appraisal Review Board in district court was not only the *proper* forum for appellee to raise his claim of tax exemption, it was the *only* forum so provided by the TAX CODE. As such, the trial court in the instant case was jurisdictionally prohibited from allowing the appellee to proceed with the claim of tax exemption during any portion of the delinquent tax suit. Because the jurisdiction to entertain such a defense

was lacking by the trial court, allowing appellee to present evidence of tax exemption was fundamental error. *Cox v. Johnson*, 638 S.W.2d 867 (Tex.1982). The TAX CODE'S provisions for protesting the denial of tax-exempt status created taxpayer rights not existing at common law and prescribed a remedy to enforce said rights. Thus, courts may act only in the manner provided by the statute which create the rights. *Bullock v. Amoco Production Co.*, 608 S.W.2d 899 (Tex.1980); *Union Central Life Ins. Co. v. Mann*, 138 Tex. 242, 158 S.W.2d 477 (1941). We hold that the trial court was without jurisdiction to permit appellee to raise any defense or ground of protest contrary to those permitted in Sec. 42.09. *Appraisal Review Board v. International Church of the Foursquare Gospel*, 719 S.W.2d 160 (Tex.1986); *Bullock, supra*, at 901. The error committed by the trial court in allowing appellee to proceed with its case on tax-exemption status, and then submitting that as the only issue to the jury was fundamental. As such, this Court may address the error as unassigned. *American General Fire & Cas. Co. v. Weinberg*, 639 S.W.2d 688 (Tex. 1982). This holding applies to the issue of appellee's delinquency for tax years 1982 through 1987, inclusive.

█ Appellant, in its reply brief, argues the point that because appellee failed to follow its administrative remedies, the trial court never had jurisdiction to hear the delinquent tax issue from the outset. We cannot accept appellant's argument at face value as appellant would be pleading itself out of its own lawsuit. Furthermore, as is evidenced by this opinion, we feel that both parties and the trial court misapplied Sec. 42.08 and Sec. 42.09. As we read it, Sec. 42.08 applies strictly to appeals from Appraisal Review Board orders. A taxpayer who has properly and timely appealed his adverse rulings up to a state district court will nevertheless be precluded from having the district court adjudicate his appeal if he has failed to tender any payment of taxes as provided by Sec. 42.08. The taxpayer's

appeal will be dismissed unless he can show substantial compliance. *See*, Sec. 42.-08(c). The exclusivity of the procedures set out in Chapters 41 and 42 for appealing adverse administrative rulings are codified in Sec. 42.09. A taxpayer is absolutely precluded from raising *any* ground of protest in a suit against him for delinquent taxes. (Sec. 42.09(b) lists two permitted defenses, but neither are applicable to the instant case.)

In the instant case, appellant brought suit for collection of delinquent taxes in the 284th Judicial District Court of Montgomery County, Texas. Statutory law and case law provides for delinquent tax suits to be brought in district courts. TEX.TAX CODE ANN., Sec. 33.41 (Vernon 1981); *International Paper Co. v. State*, 380 S.W.2d 18 (Tex.Civ.App.—Texarkana 1964, ref. n.r.e.). This issue was not an enumerated point of error, but for clarification purposes, we felt it necessary to comment on it.

■ With regard to tax years 1980 and 1981, we are presented with a unique set of circumstances. While the entirety of the TAX CODE became effective on January 1, 1982, certain sections took effect on January 1, 1980. These sections repealed certain portions of Title 122 of the REVISED CIVIL STATUTES which was the previous taxing provision. While Title 122 did provide a rudimentary procedure for taxpayers to protest assessments, it provided no procedure for protesting denials of tax exemption. *See*, TEX.REV.CIV.STAT., art. 7345f sec. 4(a) (1977) (repealed 1982) and art. 7150, sec. 1 (1931) (repealed 1980). Article 7150, Sec. 1 dealt with tax exemptions and did allow churches and church owned property an avenue for claiming exemptions provided the church first *prepare and file* a complete itemized statement of all property which is claimed to be exempt. (Emphasis added). This statement was to be filed with the tax assessor of the county in which the property was located. TEX. REV.CIV.STAT., art. 7150, sec. 1 (1931) (repealed 1980). The procedure was re-

pealed effective on January 1, 1980. Acts 1979, 66th Leg., ch. 841, sec. 3(a) and 3(j) p. 2313–2315, *Tex.Gen.Laws*.

Therefore, from January 1, 1980 to January 1, 1982, there was no statutory provision setting out a procedure by which to request or claim tax exempt status as a religious organization. There was, effective January 1, 1980, a statutory provision for the granting of tax exempt status to certain qualified religious organizations. This was Sec. 11.20 of the TAX CODE; one of the sections that took effect prior to the TAX CODE'S general effective date of January 1, 1982.

This set of circumstances put appellee in the situation of possibly qualifying for a tax exemption under the provisions of Sec. 11.20 as it exited on January 1, 1980, but the application procedure described under Art. 7150, Sec. 1 had been repealed on January 1, 1980, and the application procedure mandated by Sec. 11.43 of the TAX CODE was not effective until January 1, 1982. Acts 1979, 66th Leg., p. 313, ch. 841, sec. 3(a), *Tex.Gen.Laws*. Thus, for the years 1980 and 1981, appellee had no way to apply for tax exemption, nor was there a method for determining if appellee met the requirements for tax exemption set out in Sec. 11.20 should appellee have made a claim somehow.

Because there was no set statutory scheme in place for the tax years 1980 and 1981, we hold that due process required that appellee be permitted to raise the issue of tax exemption in defense of appellant's delinquent tax suit for the tax years 1980 and 1981 only. Appellee was presented with no other avenue with which to take advantage of the provisions of Sec. 11.20. The legislature obviously chose to provide certain property of qualified religious organizations with tax exempt status, and the exemption provisions were in effect on January 1, 1980. In holding as we do for the tax years 1980 and 1981, we must therefore address appellant's points of error ten through sixteen which challenge the legal and factual insufficiency of the evidence

insofar as these points relate to tax years 1982 through 1987 inclusive.

In the instant case, only one issue was submitted to the jury, that being what percentage of appellee's real and personal property (the radio station building and equipment) was entitled to a religious exemption from ad valorem taxation. The jury was properly instructed, based on Sec. 11.20 of the TAX CODE, that tax exemptions were allowed on real and personal property owned by religious organizations where the property is used primarily as a place of regular religious worship, and is reasonably necessary for engaging in religious worship. TEX.TAX CODE ANN., sec. 11.20 (Vernon 1980). The term "religious worship" is defined as:

> "individual or group ceremony or meditation, education, and fellowship, the purpose of which is to manifest or develop reverence, homage, and commitment in behalf of a religious faith" TEX.TAX CODE ANN., sec. 11.20 (Vernon 1980).

This definition was also provided to the jury.

In reviewing the record provided us on appeal, we take note of a glaring omission. Appellee was permitted to play a recording of a condensed version of a typical broadcast day at its radio station. This was played to the jury *without objection by appellant*. The tape recording which contained this broadcast material was not formally introduced into evidence, nor were its contents supplied to us in any form. Based on the testimony surrounding the playing of this tape for the jury, it appears that the tape's contents went directly to the issue of whether or not the radio station and its equipment were being utilized primarily for "religious worship". For whatever reason, appellant did not provide us with the tape or a transcript of its contents. It is the appellant's duty to file a statement of facts with the Clerk of this Court, which is sufficient to show error requiring reversal. TEX.R.APP.P., R. 50(d). When the complaint on appeal is that the evidence is insufficient to support the verdict, the appellant cannot discharge his burden of showing error in the absence of a complete or agreed statement of facts. *Englander Co. v. Kennedy*, 428 S.W.2d 806, 807 (Tex.1968). Due to the absence of the tape or a transcript of its contents from the record, the statement of facts is incomplete. We therefore overrule points of error ten through sixteen, inclusive, and affirm the trial court's judgment as it applies to the tax years of 1980 and 1981. Therefore we render judgment that appellee (Swaggart) must pay appellant $66,301.20. This amount represents one hundred percent of all taxes assessed against Swaggart's real and personal property for tax years 1982 through 1987 inclusive and fifty percent of the taxes assessed against the real property for tax years 1980 through 1981 inclusive plus appellant's attorneys fees as allowed by TAX CODE, sec. 33.48. Appellee (Swaggart) is further ordered to pay all court costs.

AFFIRMED IN PART; REVERSED and RENDERED IN PART.