**INWOOD DAD'S CLUB, INC.**

v.

**ALDINE INDEPENDENT
SCHOOL DIST.**

No. 01–93–00300–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 18, 1994.

Rehearing Denied Sept. 22, 1994.

Johnny J. Williams, Houston, for appellant.

Mike Driscoll, Valerie B. Ueckert, Murray E. Malakoff, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and COHEN and WILSON, JJ.

## OPINION

OLIVER–PARROTT, Chief Justice.

After a bench trial, the court found that appellant, Inwood Dad's Club, Inc. (Inwood), owed ad valorem property taxes to appellees, taxing authorities Aldine Independent School District (AISD), and the State of Texas–County of Harris (County). In addition to finding Inwood delinquent, the court held Inwood liable for interest, penalties, and attorney's fees. In three points of error, Inwood claims it is exempt from ad valorem property taxes for 1985 through 1989, that it owed no interest or penalties to the County

for tax years before 1984, and that it is not liable for attorney's fees. We reverse and render in part, reverse and remand in part, and affirm in part as modified.

Inwood incorporated in 1970, and changed its charter in 1974 to become a charitable organization. In 1975, Inwood purchased a 7.5–acre tract of land in an area known as Woodland Trails North, Section 7, which was within the boundaries of AISD and the County. From 1976 to the filing of this suit in 1989, Inwood paid no ad valorem taxes to AISD or the County. It claims that the change of its charter in 1974, and its concomitant charitable activities, made it an organization that was exempt from ad valorem property taxes under TEX.TAX CODE ANN. § 11.18(d)(9) (Vernon 1992), which replaced TEX.REV.CIV.STAT.ANN. art. 7150, § 22(6).[1]

AISD did not agree with Inwood's claimed exemption status, and it sued Inwood in 1989 to recover delinquent ad valorem taxes for 1976 through 1982 and 1985 through 1989, along with interest, penalties, and attorney's fees. The County intervened, seeking delinquent ad valorem taxes for 1976 through 1983 and 1985 through 1989, along with interest, penalties, and attorney's fees. Both taxing authorities had classified Inwood as exempt for 1984, and neither seeks taxes for that year.[2]

A tax master heard the case and found Inwood delinquent. Inwood appealed to the district court for trial de novo. The district court also found Inwood delinquent, and it rendered judgment that Inwood pay to AISD back taxes, interest, and penalties totaling $10,870.12, covering the tax years 1976 through 1982 and 1985 through 1989.[3] It also ordered Inwood to pay to the County back taxes, interest, and penalties totaling $12,460.85, covering the tax years 1976 through 1983 and 1985 through 1989, as well as attorney's fees of $1,626.78. It further ordered Inwood to pay postjudgment interest

1. Act of Sept. 1, 1975, 64th Leg., ch. 719, art. XIX, § 1, 1975 Tex.Gen.Laws 2304, 2316, *repealed by* Act of June 13, 1979, 66th Leg., R.S., ch. 841, § 6(d), 1979 Tex.Gen.Laws 2218, 2329.

2. The County sought taxes for 1983, while AISD did not seek taxes for that year. Neither the

record nor the briefs contain an explanation for the discrepancy over 1983.

3. The trial court did not award attorney's fees to AISD.

and all costs. Finally, the trial court ordered a foreclosure sale if Inwood failed to pay the judgment.

In its first point of error, Inwood asserts that the trial court erred in holding that Inwood was not an organization exempt from ad valorem property tax for the tax years 1985 through 1989. Inwood claims that it was and is a charitable organization under TEX.TAX CODE ANN. § 11.18(d)(9) (Vernon 1992). That provision states:

> (d) A charitable organization must be organized exclusively to perform religious, charitable, scientific, literary, or educational purposes and, except as permitted by Subsection (h) of this section, engage exclusively in performing one or more of the following charitable functions:
>
> . . . .
>
> (9) promoting the athletic development of boys or girls under the age of 18 years[.]

A former Inwood board member testified that the organization's purpose was to provide athletic activities for boys and girls ages four through 14. Inwood argues that its activities made it exempt under the statute. AISD and the County granted Inwood the exemption for tax year 1984, and neither taxing authority seeks back taxes for that year. AISD and the County have also granted an exemption for 1990 and the years following.

Under TEX.TAX CODE ANN. § 11.43(c) (Vernon 1992), this exemption, once granted, extends through subsequent tax years without need for Inwood to file a new application. The only exception to this automatic extension of an exemption is where the chief appraiser requires a new application to confirm the taxpaying entity's current qualifications for the exemption. *Id.* If the chief appraiser decides to require a new application, he must deliver to the taxpayer "a written notice that a new application is required, accompanied by an appropriate application form . . . ." *Id.*

If the chief appraiser did not deliver the written notice to Inwood, then he failed to satisfy the statutory requirements under which he could exercise his authority to require Inwood to file a new application for exemption. If the chief appraiser did not deliver the notice, Inwood's exemption continued, without refiling, from 1984 throughout the subsequent tax years. *Id.*

Inwood alleges that the chief appraiser did not send notice of any requirement to reapply for an exemption. Harris County Appraisal District employee, Joel Castro, supervisor of the exemption center, testified that the appraisal district had granted Inwood the exemption in 1984, and that the appraisal district did not send written notice to Inwood requiring it to reapply.

Neither AISD nor the County claims that Inwood received the statutory notice that its exemption had been removed or that its qualification must be confirmed. AISD and the County contend, however, that they did not have to send the statutory notice to Inwood, because they had sent delinquent tax notices during 1985 through 1989.

AISD argues that Section 11.43(c) does not *require* the chief appraiser to send notice to Inwood, but merely *allows* him to do so. AISD's construction of the statute is unreasonable. The statute states that the exemption, once obtained, shall continue until the property changes ownership or until the property no longer qualifies for the exemption:

> An exemption provided by Section . . . 11.18 . . . of this code, *once allowed, need not be claimed in subsequent years, and . . . the exemption applies to the property until it changes ownership or the person's qualification for the exemption changes.* However, the chief appraiser may require a person allowed one of the exemptions in a prior year to file a new application to confirm his current qualification for the exemption by delivering a written notice that a new application is required, accompanied by an appropriate application form, to the person previously allowed the exemption.

TEX.TAX CODE ANN. § 11.43(c) (Vernon 1992) (emphasis added).

AISD claims that this statute is permissive, not mandatory, regarding notice to the taxpayer. Such a construction runs against

fundamental notions of due process, and we cannot agree with AISD. The only permissive element in this code section involves the chief appraiser's authority to require a taxpayer to confirm his qualification for exemption status. It is true that the chief appraiser *may* require this from the taxpayer, but he need not do so. The appraiser *may*, on the other hand, simply allow the exemption to continue without further confirmation. That is the limit of the permissive aspect of this section.

■ Section 11.43(c) is predominantly a mandatory provision. It states that *the exemption will continue* until either of two conditions occurs: (1) change of ownership; or (2) change of qualification (i.e., charitable use of the property, in this case). If the appraiser chooses to exercise his authority to require the taxpayer to confirm his qualifications, then he *must* send written notice to that effect, along with a new application form. This is also a mandatory provision of this code section. AISD's notice argument fails.

■ The County argues that Inwood has waived its right to complain of its failure to receive notice that its exemption had been removed, because Inwood did not bring this complaint to the appraisal review board. The County claims that the tax code provides the exclusive means of resolving disputes over tax assessments, including claims of exemption. It cites sections 41.411 and 42.09 of the tax code, and several cases addressing disputes over exemption. The code sections follow:

(a) A property owner is entitled to protest before the appraisal review board the failure of the chief appraiser or the appraisal review board to provide or deliver any notice to which the property owner is entitled.

(b) If failure to provide or deliver the notice is established, the appraisal review board shall determine a protest made by the property owner on any other grounds of protest authorized by this title relating to the property to which the notice applies.

(c) A property owner who protests as provided by this section must comply with the payment requirements of Section 42.08 or he forfeits his right to a final determination of his protest.

Tex.Tax Code Ann. § 41.411 (Vernon 1992).

(a) Except as provided by Subsection (b) of this section, procedures prescribed by this title for adjudication of the grounds of protest authorized by this title are *exclusive,* and *a property owner may not raise any of those grounds:*

(1) *in defense to a suit to enforce collection of delinquent taxes;*

(2) as a basis of a claim for relief in a suit by the property owner to arrest or prevent the tax collection process or to obtain a refund of taxes paid.

(b) A person against whom a suit to collect a delinquent property tax is filed may plead as an affirmative defense:

(1) if the suit is to enforce personal liability for the tax, that the defendant did not own the property on which the tax was imposed on January 1 of the year for which the tax was imposed; or

(2) if the suit is to foreclose a lien securing the payment of a tax on real property, that the property was not located within the boundaries of the taxing unit seeking to foreclose the lien on January 1 of the year for which the tax was imposed.

(c) For purposes of this section, "suit" includes a counterclaim, cross-claim, or other claim filed in the course of a lawsuit.

Tex.Tax Code Ann. § 42.09 (Vernon 1992) (emphasis added).

Inwood was entitled, under section 11.43(c), to receive notice from the chief appraiser of any decision either to remove Inwood's exemption or to require Inwood to confirm its continued qualifications for the exemption. It is true that Inwood was further entitled, under section 41.411(a), to protest this lack of notice to the appraisal review board.

The County contends that section 42.09 limits Inwood's remedy to such a protest before the appraisal review board, and precludes Inwood's assertion of its exempt status as a defense in this suit. AISD and the County point out that Inwood has not assert-

ed either of the affirmative defenses in section 42.09(b). They argue that by failing to protest the removal of its exemption before the appraisal review board, Inwood has waived this complaint. They claim that this protest procedure is jurisdictional, and that the trial court could not consider Inwood's exemption claim as a defense. AISD and the County cite *Northwest Texas Conference of the United Methodist Church v. Happy Independent School District*, 839 S.W.2d 140, 143 (Tex.App.—Amarillo 1992, no writ), for this proposition.

In *Northwest Texas Conference*, the Methodist Church owned property that had been exempt from property taxes from 1927 through 1981. During those years, there was no statutory requirement that a party claiming an exemption apply to the taxing authority for the exemption. *Id.* at 142. In 1982, section 11.43 went into effect, requiring an initial application for an exemption, after which the exemption would continue without reapplication. *Id.* The church conference trustees never made the newly required initial application for exemption, and the property was assessed a tax for 1982.

In 1990, the school district sued the church conference to collect delinquent ad valorem property taxes from 1982, and the church defended on grounds that it was exempt. The court held that the church could not assert its exemption claim as a defense in the suit to collect delinquent taxes. AISD and the County rely on the following language from *Northwest Texas Conference*:

Compliance with these Code provisions is jurisdictional. . . .

The procedures prescribed by the Code are the only means by which property owners may challenge the denial of exemption status. To be entitled, and exercise the right, to defend against a suit for delinquent taxes after 1982, the complaining party must follow the procedures established in the Code because they are the exclusive means for judicial review.

The record is devoid of any attempt by the Trustees to pursue the remedies established by the Code to protest their inclusion on the appraisal records and, thus, they have deprived the court of jurisdiction

to consider their defense. Consequently, the trial court was jurisdictionally prohibited from considering the Trustees' claim of tax exemption.

*Id.* at 143 (citations omitted).

AISD and the County fail to note, however, that in *Northwest Texas Conference*, the church conference *never* made any application as required by the new statute. "The Trustees make no claim that they lacked notice of the change in the law or the requirement of application, nor that a timely application was made to have the property exempted from 1982 taxes." *Id.* at 142.

The court could not consider the exemption claim of the church conference, because the church never availed itself of the code requirement to make the initial application to receive an exemption. The church never received an exemption under the new statutory regime; hence, it was not complaining that the exemption had been improperly removed without notice. This differs from Inwood's situation. Inwood had received an exemption under the new statute, and it was removed without notice and in violation of the statute. *Northwest Texas Conference* is distinguishable and does not control.

AISD and the County also cite *City of Shenandoah v. Jimmy Swaggart Evangelistic Association*, 785 S.W.2d 899, 900 (Tex. App.—Beaumont 1990, writ denied). In *Shenandoah*, the City sued the evangelistic ministry to collect delinquent ad valorem taxes on real property (first suit). After the first suit was initiated in 1981, the statutory regime changed in 1982, and the ministry filed its first and only application for exempt status. *Id.* at 901. The appraisal district denied the ministry's application for exemption. *Id.* The ministry protested this denial to the appraisal review board (ARB), which denied the protest. The ministry then appealed the ARB's denial by filing a separate suit against the appraisal district and the ARB in district court (second suit). *Id.* at 901, 903. The second suit was settled without trial, and was dismissed. *Id.* at 903. The first suit—i.e., the City's suit to collect delinquent taxes—was unaffected by this settlement of the second suit. As the first suit

continued, the ministry claimed its alleged exemption status as a defense. *Id.* at 903. The court held that it could complain of the denial of its exemption status only in the other suit (that had been settled), and could not do so in the suit to collect delinquent taxes:

> Appellee's suit against the Appraisal District and Appraisal Review Board in district court was not only the *proper* forum for appellee to raise his claim of tax exemption, it was the *only* forum so provided by the TAX CODE. As such, the trial court in the instant case was jurisdictionally prohibited from allowing the appellee to proceed with the claim of tax exemption during any portion of the delinquent tax suit.... We hold that the trial court was without jurisdiction to permit appellee to raise any defense or ground of protest contrary to those permitted in 42.09.

*Id.* at 903.

In citing *Shenandoah,* AISD and the County conclude that the tax code prevents Inwood from claiming its exemption status as a defense in this suit to collect delinquent taxes. In *Shenandoah,* however, the taxpayer had been *denied* exempt status upon application. Such was not the case with Inwood. Inwood had been *granted* exemption status, and had a statutory right to rely on that exemption continuing indefinitely. TEX. TAX CODE ANN. § 11.43(c) (Vernon 1992). *Shenandoah* is distinguishable and does not control.

AISD and the County also rely upon *Keggereis v. Dallas Central Appraisal District,* 749 S.W.2d 516 (Tex.App.—Dallas 1988, no writ), for the proposition that Inwood's failure to exhaust the tax code's administrative remedies constitutes a waiver of its exemption claim. The Keggereises owned a private school that had received a complete tax exemption from 1978, when they purchased the school, until 1985. *Id.* at 517. In the intervening years, the tax code came into being, and, as noted above, required all taxpayers seeking an exemption to file an initial application for exempt status. The Keggereises filed an application for tax exempt status for 1985. *Id.* In 1985, *the Appraisal Review Board (ARB) sent the Keggereises a notice*

that the school did not qualify for the tax exemption as a private school. *Id.* The Keggereises filed notice of their protest under the procedures prescribed in the tax code, and a hearing followed. The Keggereises alleged that at the hearing on the denial of their application for tax exemption, they were not allowed to present any evidence on the school's tax exempt status. *Id.* After the hearing, the ARB again denied their application for tax exemption. *Id.* The Keggereises could have appealed this post-hearing denial to district court for de novo review, but they took no further action. *Id.*

The following year, 1986, *a year after the Keggereises had been informed that their application for tax exempt status had been denied,* the ARB sent the Keggereises notice of its tax appraisal of the school for the 1986 tax year. *Id.* Although the Keggereises had their previous application for tax exempt status denied, and were not presently enjoying an exemption, they had not filed another application for tax exemption for the 1986 tax year. *Id.* Upon receiving the notice of the ARB's assessment for 1986, *knowing the school had not been granted an exemption,* the Keggereises filed notice of appeal with the ARB. They then filed suit in district court for judicial review of the ARB's denial of the 1986 exemption, *for which they had never applied. Id.* The trial court granted summary judgment for the ARB, and the Keggereises appealed. *Id.* at 517–18.

On appeal, the Keggereises argued that they were not required to file an application for exempt status in 1986, because the ARB had violated their constitutional right to due process when it refused to allow them to present evidence at the hearing in 1985. *Id.* at 518. They reasoned that the ARB's alleged denial of due process in the administrative hearing made the ARB's denial of their application a void order. *Id.* The Keggereises further contended that, if it was a void order, they were relieved from appealing the 1985 denial and were also relieved from the requirement that they apply in 1986. *Id.*

The court of appeals disagreed with the Keggereises' premise that ARB's refusal to allow them to present evidence at the 1985 hearing amounted to a denial of their consti-

tutional due process rights. "Due process simply affords a right to be heard before. final assessment; it does not detail the review mechanism. Thus, the Code, by its provisions, meets the challenged requirement of due process since Taxpayers have a right to a de novo review in the district court." *Id.* It held that the Keggereises were barred from pursuing their claim of tax exemption for the tax years 1985 or 1986, because they had failed to exhaust their administrative remedies. *Id.* at 518–19.

*Keggereis* is distinguishable from Inwood's situation on two major bases: (1) the Keggereises' application for exempt status in 1985 was denied, so they had no statutory right to expect the nonexistent exemption to continue; and (2) although the Keggereises knew that their exemption status had been denied for 1985, they did not file for exemption for 1986. Inwood, to the contrary, *received* its exemption for 1984 (under the new tax code), and it had a statutory right to expect that exemption to continue without having to file again, until the appraiser delivered notice to Inwood of its requirement that Inwood verify its qualifications. The appraiser never delivered such notice, so Inwood could rely on the exemption, without ever having to file another application. Thus, *Keggereis* is distinguishable and does not control.

Neither AISD nor the County has cited any case in which a taxpayer was limited to the *protest* procedure in the tax code under the following facts: (1) the appraiser granted the taxpayer's exemption; and (2) the taxpayer had the statutory right to rely upon the continuation of that exemption without refiling; but (3) the appraiser *removed that exemption without notice to the taxpayer.* This is Inwood's situation, and AISD and the County claim Inwood may not challenge the appraiser's removal of Inwood's tax exempt status except through the protest procedures in the tax code. We disagree.

A taxpayer who disputes the *denial* of an exemption may protest before the appraisal review board. TEX.TAX CODE ANN. § 41.41(4) (Vernon 1992). Inwood's application for exemption was never denied; to the contrary, it was granted. Inwood had nothing to protest

before the ARB. Later, the appraiser *removed* Inwood's exemption; it did not *deny* it. The tax code does not contemplate such action; hence, it provides no administrative review procedure for this.

The appraiser had no authority to *remove* the exemption without specific notice to Inwood that Inwood would be required to confirm its qualifications for its exempt status. Without such notice, *required by the statute upon which both AISD and the County rely*, the appraiser never acquired jurisdiction to remove the exemption. *Garza v. Block Distrib. Co.*, 696 S.W.2d 259, 262 (Tex.App.—San Antonio 1985, no writ); TEX. TAX CODE ANN. § 11.43(c) (Vernon 1992). Thus, the appraiser's removal of Inwood's exemption was a void act that could be challenged anywhere and anytime. *Garza*, 696 S.W.2d at 262.

In *Garza*, the taxpayer, Block Distributing Company, obtained a permanent injunction against the Bexar County Tax Assessor–Collector, restraining any attempt to collect additional taxes based on an increase in assessed value. *Id.* at 260. The tax assessor-collector had failed to follow the statutory procedure for increasing the property assessment. Specifically, he had failed to give prior notice to Block of the impending increase in the valuation of Block's property. *Id.*

The tax assessor-collector argued on appeal (as do AISD and the County in the present suit) that the trial court had no jurisdiction to consider the merits of the taxpayer's claim, because the taxpayer failed to follow all the protest requirements of the tax code. *Id.* The court disagreed, and characterized the dispute as follows:

[W]e have a quasi-judicial body making a large increase in the valuations without giving the taxpayer the opportunity to be heard. And, having so violated its due process rights, the appellants would now deny the taxpayer any opportunity to obtain judicial relief from *its illegal acts.* The mere statement of the proposition demonstrates its lack of merit.

*Id.* at 261 (emphasis added).

The court held that the appraisal review board, "in the absence of notice to Block,

*never acquired jurisdiction* to consider any increase in Block's valuation.... Since the Appraisal Board never acquired jurisdiction of the proposed increase in value, its approval thereof was *a void act and subject to challenge at any time or place."* *Id.* at 262 (emphasis added); *see also City of Houston v. Union City Transfer,* 307 S.W.2d 645, 648–49 (Tex.Civ.App.—Houston [1st Dist.] 1957, no writ).[4]

Inwood challenged the board's act in the district court, but to no avail. Inwood has reasserted its challenge in this court, and we hold that Inwood's charitable organization exemption continued throughout the years in question in this suit. The trial court erred in finding Inwood liable for delinquent taxes, penalties, and interest for tax years 1985 through 1989.

We sustain Inwood's first point of error.

■ In its second point of error, Inwood claims it owes no interest or penalties to the State or to Harris County on taxes for the tax years prior to 1984. Inwood does not challenge the judgment that it is liable to AISD for back taxes from 1976 through 1982, along with interest and penalties. Indeed, Inwood stipulated that it was liable to AISD for back taxes from 1976 through 1982, which years were prior to the creation of the Harris County Appraisal District. Although Inwood's stipulation did not include the County, Inwood has not assigned a point of error to the judgment in favor of the County for back taxes from 1976 through 1983. Inwood claims, however, that it should not be held liable for interest or penalties to the County because it failed to receive notices of its delinquency for those years.

An Inwood board member testified that Inwood did not pay taxes during the pre-appraisal district years, because it thought it was exempt under the statute that was then in effect. TEX.REV.CIV.STAT.ANN. art. 7150, § 22(6). Under the former statute, and prior to the creation of the appraisal district, Inwood was not required to file an application

for the exemption in the manner that is now required. *See id.* (not requiring charitable organizations to file application for exemption); *see also Northwest Texas Conference,* 839 S.W.2d at 142 (observing that from 1927 through 1981, there was no statutory requirement that a party claiming exemption apply to the taxing authority for the exemption); *cf.* TEX.TAX CODE ANN. § 11.43(a), (c) (Vernon 1992) (requiring property owners claiming tax-exempt status as charitable organizations to file an exemption application with the chief appraiser of the appraisal district).

As noted above, Inwood stipulated its tax liability to AISD for 1976 though 1982. In addition, Inwood failed to assign error to the trial court's finding of tax liability to the County for 1976 through 1983. In light of this stipulation and this absence of assigned error, we do not decide whether Inwood was correct or mistaken in its earlier belief that it had satisfied the tax exemption requirements for 1976 through 1983. We address only the propriety of penalties and interest to the County for those years.

Inwood changed its charter in 1974 to become a charitable organization, and it has operated as such continually ever since. Under the law before 1982, Inwood could claim the exemption without filing an application with the Harris County Appraisal District. Indeed, the appraisal district had not yet been created. If Inwood's alleged tax exemption for 1976 through 1983 was in error, it was incumbent upon the taxing authorities to inform Inwood of this. The taxing authorities were required by statute to inform Inwood of the alleged delinquency by sending delinquency notices. TEX.TAX CODE ANN. § 33.04 (Vernon 1992), which replaced TEX. REV.CIV.STAT.ANN. art. 7324, *repealed by* Act of June 13, 1979, 66th Leg., R.S., ch. 841, § 6(a)(1), 1979 Tex.Gen. Laws 2218, 2329.

This section of the tax code went into effect on January 1, 1982, and governs the delinquency notice issue for tax years 1982

---

4. In addition, the trial court's judgment in this case acknowledged that AISD's earlier appraisals on the 7.5–acre tract for 1976 through 1982 "were made without notice to the owner and are void...." (These earlier void appraisals were

replaced in the judgment by Inwood's stipulations.) The trial court's recognition of the void acts of these taxing authorities simply did not go far enough.

and 1983. The former statute, article 7324, governs this issue for tax years 1976 through 1981. The County acknowledges this statutory change, and observes that article 7324 further provides that failure to deliver the required delinquency notices is "no defense to a suit brought for taxes." TEX.REV.CIV. STAT.ANN. art. 7324.

The County contends that this provision prevents Inwood from asserting in its defense that the taxing authorities never delivered the required delinquency notices. Specifically, the County argues that this prohibition extends to the County's claim for penalty and interest. In its postsubmission brief, the County urged: "Even if the Harris County Tax Collector failed to send delinquency notices ... that failure has *no effect on the penalties and interest* awarded during the years 1976 through 1981." (Emphasis added.)

The County has misconstrued article 7324, which was the governing statute for years 1976 through 1981. The relevant phrase from article 7324 (quoted above) did not address suits for penalties or interest, but only suits for the delinquent *taxes*. Therefore, the governing statute for tax years 1976 through 1981 does not preclude Inwood from asserting, as a defense to the County's claim for penalties and interest, that the County failed to deliver the required delinquency notices. The trial court had jurisdiction to consider Inwood's claim that it never received the required delinquency notices for years 1976 through 1981.

The statute governing the dispute over tax years 1982 and 1983 also requires the tax collector to send delinquency notices.[5] TEX.TAX CODE ANN. § 33.04 (Vernon 1992). At trial, the County introduced into evidence a certified copy of a delinquent tax statement, listing delinquencies for 1976 through 1983. It argues that this statement is prima facie evidence that the delinquency is correct, and that it is entitled to penalty and interest for those years.

Since Inwood does not challenge the judgment that it is liable to the County for delinquent taxes for 1976 through 1983,[6] the only issue in this point of error is the propriety of assessing penalty and interest for those years. As stated above, Inwood operated under its charter as a nonprofit charitable organization, and it believed that it was entitled to property tax exemption for 1976 through 1983. The *taxing authority never notified Inwood* during those years that it was not entitled to the exemption; nor did the County notify Inwood that it owed any delinquent taxes. The County's own evidence—the certified copy of the delinquent tax statement—does not even raise a rebuttable presumption that the delinquency notices were mailed, because the document introduced into evidence is dated September 30, 1992, *nine years* after the end of the time period that it purports to cover.

An Inwood board member testified that Inwood never received any delinquency notices from the County. This testimony was not contradicted. Inwood supported this claim by introducing an earlier version of the delinquency tax statement, dated August 31, 1989, six months after AISD filed suit and one month before the County intervened. The 1989 version of the delinquent tax statement gives the wrong name for the organization, and lists the address as simply "ZZZ". It shows the same account number and legal description of the property in question as the later, "corrected" tax statement. Inwood asserts that this 1989 tax statement is evidence that the County did not have Inwood's correct address, supporting Inwood's claim that

---

5. The tax code eliminates the provision that prohibits a taxpayer from asserting failure to deliver the required delinquency notices as a defense in a suit to recover delinquent taxes. The County apparently is aware of this change in provision, because it does not argue this regarding tax years 1982 and 1983. In light of our construction of the former statute, article 7324, this distinction is unnecessary for determining this point of error.

6. As observed above, Inwood's stipulation of tax liability to AISD did not expressly include a stipulation of tax liability to the County. Inwood has not challenged the judgment that it is liable to the County for taxes for years 1976 through 1983; it challenges only the award of interest and penalties on the trial court's finding of Inwood's liability to the County. Nor has Inwood challenged the judgment that it is liable to AISD for interest and penalties on the stipulated tax liability for 1976 through 1982.

the County never sent the delinquency notices. We agree. Inwood's testimony, combined with the copy of the earlier tax statement, is sufficient to rebut any presumption that delinquency notices were delivered when deposited in the mail. *Uvalde County Appraisal Dist. v. Parker,* 733 S.W.2d 609, 611 (Tex.App.—San Antonio 1987, writ ref'd n.r.e.). Here, however, neither Inwood nor the County produced any evidence that delinquency notices were ever deposited in the mail. Therefore, the presumption of delivery does not arise.

The County responds that it was precluded from any obligation to send the delinquency notices if it did not have Inwood's correct address and could not, through due diligence, discover Inwood's correct address. TEX.TAX CODE ANN. § 33.04(a)(2) (Vernon 1992). The County then attempts to distinguish *Uvalde* on the basis that the *Uvalde* court made findings of fact and conclusions of law, whereas the trial court in the present suit did not. In *Uvalde,* the County properly observes, the court specifically found that the taxpayer did not receive the delinquency notices. 733 S.W.2d at 610. The appellate court simply reviewed that finding on a sufficiency of evidence basis. *Id.* at 611.

The County contends that, in the absence of findings of fact, this Court must presume that the trial court found whatever facts it needed to support its judgment. The County suggests only two possibilities: "Thus, because findings of fact were not filed in this cause, this Court must assume that the trial court found either [1] that Inwood received the delinquency notices or [2] that the collector did not know or through the exercise of reasonable diligence could not have determined Inwood's address." We agree that these are the only two possible findings that could reasonably support the judgment. We disagree, however, that the trial court was within its discretion to find either one of these.

All the evidence concerning delivery of the delinquency notices points to the conclusion that the notices were not delivered. The

County failed to put on any evidence to show that it delivered the notices. In light of the evidence before it, the trial court could only have found that the delinquency notices were not delivered. If it implicitly found otherwise, it abused its discretion.

The County's other suggested finding is that the County could not, through due diligence, have discovered Inwood's correct address. The County itself introduced evidence at trial showing that the County had Inwood's correct address on earlier correspondence with the organization, dated 1982 and 1983.[7] The County produced this evidence at trial, *nine years* after the dates on the documents. If the County had exercised due diligence during 1982 or 1983, it could have found that it already possessed Inwood's correct address. If the trial court implicitly found otherwise, it abused its discretion.

The County finally contends that Inwood is barred from "seeking a waiver" of penalty and interest in the district court, because the district court has no authority to waive penalties or interest. It claims that TEX.TAX CODE ANN. § 33.011 (Vernon 1992) vests discretion to forgive penalties and interest, not in the district court, but in the governing body of the taxing authority. The County has mischaracterized Inwood's point of error, and has misstated the statute. The code provides:

> The governing body of a taxing unit *shall waive penalties* and may provide for the waiver of interest on a delinquent tax *if an act or omission of an officer, employee, or agent of the taxing unit or the appraisal district in which the taxing unit participates caused or resulted in the taxpayer's failure to pay the tax before delinquency* and if the tax is paid within 21 days after the taxpayer knows or should know of the delinquency. A request for a waiver of penalties under this section must be made within six months of the delinquency date.

*Id.* (emphasis added).

The County characterizes this provision as vesting in the taxing authority discretionary

---

7. These were letters regarding a separate parcel of land purchased by Inwood, not a subject of this tax dispute.

power to waive penalties. This is not an accurate reading of the statute. The statute mandates that the taxing authority *"shall waive penalties"* if the acts of its own agents cause the delinquency. *Id.* (emphasis added). In the present case, the evidence unequivocally shows that the appraiser failed to send the required delinquency notices. The County is, therefore, statutorily mandated to waive the penalties. The waiver of interest, however, is discretionary under this code section.

The County further contends that before Inwood could obtain either the mandatory waiver of penalties (which the County wrongly contends is discretionary) or the discretionary waiver of interest, that Inwood must follow the statutory conditions in this section regarding payment and request for waiver. We disagree. The trial court's judgment contained Inwood's stipulation of liability for delinquent taxes for 1976 through 1983. · The judgment orders that the appraisal and tax rolls for 1976 through 1983 be corrected, showing the amounts to which the parties stipulated Inwood's liability. It was not until this stipulation *in the judgment* that Inwood had reason to know that it owed the delinquent tax. Section 33.011 provides procedures for the timely request for waiver of penalties and interest. By awarding penalties and interest to the County in the same document, on the same day, that Inwood obtained knowledge of its liability for delinquent taxes, the trial court circumvented the statutory timetable for Inwood's opportunity to seek the waivers. Inwood was precluded from pursuing these statutory provisions.

This leads to the County's mischaracterization of Inwood's point of error. The County states that Inwood was "seeking a waiver" of penalties and interest *in the district court.* Such is not the case. Inwood complains on appeal that the trial court erred in awarding penalties and interest to the County. As we have noted, the trial court awarded penalties and interest to the County based on Inwood's tax liability stipulation in the judgment, thus preventing Inwood from pursuing the statutory provisions for mandatory waiver of penalties and discretionary waiver of interest.

Inwood would have obtained the mandatory penalty waiver if the trial court had only allowed Inwood the opportunity to pursue it. When it circumvented this mandatory statutory provision, the trial court erred. The County, therefore, may not recover penalties from Inwood in this suit. The waiver of interest is not mandatory, however, and we conclude that interest on Inwood's tax liability to the County for 1976 through 1983 is appropriate. The County may, therefore, recover interest on the amount of taxes for which the trial court found Inwood liable for 1976 through 1983.

We sustain Inwood's second point of error in part.

■■■ In its third point of error, Inwood claims that the award of $1,626.78 in attorney's fees to the County is unreasonable. The taxing authority has the burden of showing that its attorney's fees are reasonable. *City of Houston v. First City,* 827 S.W.2d 462, 476 (Tex.App.—Houston [1st Dist.] 1992, writ denied). Inwood alleges that the County brought forth no evidence to show that the amount requested was reasonable. Attorney's fees are limited by statute to "15% of the total amount of taxes, penalties, and interest adjudged due the unit." TEX.TAX CODE ANN. § 33.48(a)(4) (Vernon 1992). The County cited this code provision at trial and requested $1,626.78.[8] The trial court was entitled to take judicial notice of the usual and customary attorney's fees without any additional evidence. *Ross v. 3D Tower Ltd.,* 824 S.W.2d 270, 273 (Tex.App.—Houston [14th Dist.] 1992, writ denied). Even if the trial court did not state that it was taking such judicial notice, this court may presume that the trial court did so. *Id.* at 273. A trial court's award of attorney's fees will not be overturned without a showing of abuse of discretion. *Id.*

However, in light of our disposition of points of error one and two, Inwood can only be liable for the County's attorney's fees up to 15 percent of the stipulated amount of taxes and interest due. That amount must be determined by the trial court.

8. This is less than 15 percent of the $12,450.85 total allegedly due.

We sustain Inwood's third point of error in part.

Inwood did not challenge the portion of the judgment that Inwood is liable to AISD for taxes as stipulated for 1976 through 1982, along with interest and penalties for those years. Nor did Inwood challenge the portion of the judgment that Inwood is liable to the County for taxes as found by the trial court for 1976 through 1983, along with interest, but not penalties, for those years. We express no opinion on those portions of the judgment that were not challenged.

We hold that the County, by failing to deliver delinquency notices to an organization whose address was known, that was operating under a reasonable presumption of exemption under the former statutory provisions, waived its right to sue for *penalties* for tax years 1976 through 1983. We reverse and render judgment that The State of Texas–County of Harris take only the taxes and interest for tax years 1976 through 1983, but take no penalties on those taxes; we remand to the trial court for clarification of taxes due for tax years 1976 through 1983 and for redetermination of the interest on those taxes.

We further hold that Inwood was a charitable organization for all of the tax years 1985 through 1989, within the meaning of the tax exemption statute, and that the appraiser's act in removing Inwood's exemption without notice was void and subject to attack at any time and in any place. Hence, AISD and the County are barred, as a matter of law, from recovering ad valorem taxes from Inwood for tax years 1985 through 1989. We reverse and render judgment that taxing authorities Aldine Independent School District and The State of Texas–County of Harris take nothing against Inwood for the tax years from 1985 through 1989.

Finally, we reverse and remand to the trial court for redetermination of reasonable attorney's fees due to The State of Texas–County of Harris based on the amount of taxes for which the trial court found Inwood liable for tax years 1976 through 1983.