**AMOCO PRODUCTION COMPANY, Appellant,**

v.

**Bob BULLOCK, Comptroller of Public Accounts, et al., Appellees.**

**No. 12963.**

Court of Civil Appeals of Texas, Austin.

July 11, 1979.

Rehearing Denied Aug. 1, 1979.

C. Morris Davis, Marc O. Knisely, McGinnis, Lochridge & Kilgore, Austin, for appellant.

Mark White, Atty. Gen., Gilbert J. Bernal, Jr., Asst. Atty. Gen., Austin, for appellees.

O'QUINN, Justice.

Amoco Production Company brought this lawsuit in 1975 to recover in excess of $295,000 alleged to be unlawfully withheld by the Comptroller of Public Accounts as part of more that $718,000 in overpayments by Amoco of franchise taxes in the years 1963 through 1971, admitted by the Comptroller to be subject to refund, or tax credits, under Article 1.11, Title 122A, Taxation-General. The sum withheld by the Comptroller was the amount of a deficiency the Comptroller claimed due for the year 1962. Amoco also sued for an additional sum of nearly $109,000 in taxes Amoco claimed it overpaid to the Comptroller for 1962, the same year of the claimed deficiency.

From judgment of the district court dismissing the suit for want of jurisdiction, Amoco appealed and brings three points of error. We will reverse the judgment of the trial court and remand the cause for trial on the merits.

The administrative events culminating in this lawsuit began late in 1971 when the Comptroller initiated a comprehensive franchise tax audit of the records and reports of Amoco for the years 1962 through 1971. Auditors for the Comptroller ultimately concluded in 1972 that Amoco, for the years 1963 through 1971, had overpaid its franchise taxes in the total amount of $718,098.16. The auditors also concluded that Amoco had underpaid, for the year 1962, the sum of $249,583.00 in taxes, and added

penalty and interest to produce a total deficiency claimed of $295,051.27. Amoco contended that instead of owing a deficiency for 1962, the company had overpaid the Comptroller by $108,856.92 for that year.

Thereafter, in March of 1972, Amoco presented a detailed written statement of the company's position with respect to the deficiency claimed for 1962 and initiated request for redetermination permissible under Article 1.032 of the tax statutes. The Comptroller responded by notice in June of a redetermination hearing set for the following August 2, 1972, on the deficiency of $295,051.27 claimed for 1962.

Prior to the hearing set for August 2, the Comptroller on July 10, 1972, issued to Amoco three overpayment notices for $401,-687.29, $18,048.69, and $3,310.91, in the total sum of $423,046.89. These tenders by the Comptroller were in compliance with power granted the Comptroller under Article 1.11, which authorizes the Comptroller, upon determining that the taxpayer has overpaid the tax, to *credit* the taxpayer " . . . with the *consent of the taxpayer* . . . with the amount of such overpayment." (Art. 1.11(2), emphasis added). In event the taxpayer does not consent to credit, but prefers a refund, the Comptroller is authorized under Article 1.11A to " . . . *refund such overpayment* by warrant on the State Treasury from any funds appropriated for such purpose." (Art. 1.11A(2), emphasis added).

The tenders of *credit* by the Comptroller of $423,046.89 were not accepted by Amoco, and after inquiry of the Comptroller and assurance that request for *refund* of such sums would not adversely affect Amoco's contest of the deficiency claimed for the year 1962, Amoco made request pursuant to Article 1.11A for refund instead of credit. The Comptroller at no time tendered credit for the balance of the total of $718,098.16 in overpayments admitted by the Comptroller for the years 1963 through 1972. The difference, retained by the Comptroller and not offered to the taxpayer as a *credit* under Article 1.11, or as a *refund* under Article 1.11A, represented the amount of the total deficiency the Comptroller claimed for 1962.

Nor did the Comptroller at any time seek or obtain "consent of the taxpayer" to credit Amoco's tax account for 1962 with the overpayments balance of $295,051.27 due Amoco for the years 1963 through 1971, as required by Article 1.11(2). After postponement from August 2, the redetermination hearing was held September 14, 1972, and more than a year later, on September 18, 1973, the findings of the hearing examiner were approved by the Comptroller denying Amoco's request to set aside the deficiency determination for 1962 and for refund of the sums withheld.

Amoco filed timely motion for rehearing on October 12, 1973, and more than sixteen months later, on February 19, 1975, the Comptroller gave notice of his decision to approve findings of the examiner following the hearing in September 1972. The Comptroller, in compliance with Article 1.032(E), made his order final on March 21, 1975, thirty days after service of notice on the taxpayer.

Amoco filed suit on March 21, 1975, the day the Comptroller's order became final. The nature of the suit is expressed in Amoco's prayer that the court determine " . . . that the amount of $295,051.27 was unlawfully withheld from the refund amounts owing the plaintiff for overpayment of franchise taxes in the years 1963 through 1971 and that said $295,051.27 be forthwith paid the plaintiff by the State of Texas, and further that the plaintiff has overpaid its franchise taxes to the State of Texas for the year 1962 in the amount of $108,856.92, that such amount is owing the plaintiff as a refund . . . "

■ The Comptroller contended in district court, and contends on appeal, that the courts are without jurisdiction to entertain this suit because Amoco failed, pursuant to Article 1.05, to pay under protest the deficiency claimed by the Comptroller for the year 1962, to accompany such payment with

written reasons for protest, and thereafter to bring suit within ninety days. Under the facts of this case, payment of $295,051.27 by Amoco to meet the deficiency claimed for 1962 would have required Amoco to make the equivalent of a total payment to the State of $590,102.54, or double the amount of the deficiency claimed, in order (1) to obtain refund of $295,051.27 admittedly due Amoco for overpayments in the years 1963 through 1971 and (2) to qualify its suit against the State as a contest of the claimed deficiency for 1962.

As already pointed out, the Comptroller withheld the sum of $295,051.27 and refused to offer credit under Article 1.11 or refund under Article 1.11A, although the statutes clearly contemplate credit or refund to the taxpayer of " . . . the *amount of such overpayment.*" By withholding $295,051.27 from credit or refund due for the years 1963 through 1971, the Comptroller failed to follow the statutory procedure for credits or refunds and chose instead to credit Amoco's account for 1962 without the taxpayer's consent as required by statute. We hold that the taxpayer thereby was relieved of the obligation to pay the additional taxes for 1962 in order to meet the requirements of Article 1.05.

Under these circumstances, we conclude that Article 1.05 is without application to the facts of this lawsuit, and Amoco may maintain its suit against the Comptroller for refund of $295,051.27, which the Comptroller credited without the taxpayer's consent to a disputed tax account for 1962. It is undisputed that such sum was due Amoco as a *credit, with its consent,* or as a *refund,* from overpayments made in the years 1963 through 1971. It is understandable that the Comptroller, having a dispute with the taxpayer over $295,051.27 in taxes for 1962, would be reluctant to refund the entire amount of overpayments for the years 1963 through 1971, but we find no authority in the statutes to authorize arbitrary application of a substantial portion of the overpayments to another tax period in dispute. We

believe a fair and just construction of the statutes permits maintenance of this lawsuit in order that the courts, upon trial on the merits of the controversy, may determine whether Amoco is entitled to a refund of the sum withheld, together with its claim of overpayment in 1962, or that the Comptroller has correctly found a deficiency for the year 1962 in the amount claimed by the Comptroller.

Although the record is not clear as to when the Comptroller credited the tax account of 1962 with the exact amount of the overpayments withheld, it is evident that the credit at some time was applied to that tax year; otherwise, the identical sum would not have been withheld. This action questioned by Amoco through a redetermination hearing, became final when the Comptroller's decision became final March 21, 1975, the day suit was filed.

The Comptroller argues that because Article 1.11 provides that the Comptroller "*may* with *consent* of the taxpayer" credit "the amount of such overpayment," an option lies with the Comptroller to credit or not credit the account. We fail to perceive the legal logic in such argument, particularly in view of the situation here where the Comptroller elected to credit, without the taxpayer's consent, *less* than "the amount of such overpayment," and apply the credit to the disputed account for 1962, and also to refund *less* than the full amount of the undisputed overpayments for the years 1963 through 1971.

In cases where a vested property right has been adversely affected by action of an administrative body, an inherent right of appeal to the courts exists. *Brazosport Savings and Loan Association v. American Savings and Loan Association,* 161 Tex. 543, 342 S.W.2d 747, 750 (1961); *Chemical Bank and Trust Company v. Faulkner,* 369 S.W.2d 427 (Tex.Sup.1963). It is also firmly established that if acts of officials are not lawfully authorized, and therefore not acts of the State itself, suit may be maintained for

protection of rights which have been invaded, denied, or violated by such unauthorized acts. *Cobb v. Harrington*, 144 Tex. 360, 190 S.W.2d 709 (1945); *W. D. Haden Company v. Dodgen*, 158 Tex. 74, 308 S.W.2d 838 (1958); *Oxford v. Hill*, 558 S.W.2d 557, 560 (Tex.Civ.App. Austin 1977, writ ref'd).

The judgment of the trial court dismissing the suit for want of jurisdiction is reversed. The cause is remanded to district court with instructions that trial be held on the merits of the controversy in conformity with this opinion.

Judgment reversed and cause remanded with instructions.