Bob BULLOCK, Comptroller of Public Accounts et al., Petitioners,

v.

AMOCO PRODUCTION COMPANY, Respondent.

No. B–8788.

Supreme Court of Texas.

Oct. 1, 1980.

Rehearing Denied Dec. 17, 1980.

Mark White, Atty. Gen., Gilbert J. Bernal, Jr., Asst. Atty. Gen., Austin, for petitioners.

McGinnis, Lochridge & Kilgore, C. Morris Davis, Austin, for respondent.

CAMPBELL, Justice.

This is a franchise tax case. The trial court dismissed the cause for lack of jurisdiction. The Court of Civil Appeals reversed the trial court judgment and remanded the cause for trial. 584 S.W.2d 388. We reverse the judgment of the Court of Civil Appeals and affirm that of the trial court.

In 1971 the Comptroller began a franchise tax audit of Amoco for the years 1962 through 1971. The Comptroller concluded that Amoco had underpaid its taxes by $249,583 for 1961 and had overpaid $718,-098.16 for 1963 through 1971. Penalty and interest for the deficit payment caused a total deficiency of $295,051.27 for 1962.

Amoco contended that the Comptroller was in error in assessing a deficiency for 1962 and that it had overpaid $108,856.92 for that year. Pursuant to Article 1.032 [1] of the Tax Statutes, Amoco initiated a request for redetermination. The Comptroller set the redetermination hearing for August 2, 1972.

The Comptroller, on July 10, 1972, pursuant to Article 1.11(2) tendered credit of $423,046.89 (the difference between the overpayment for 1963–1971 and the total deficiency for 1962) to Amoco. Article 1.11(2) allows the Comptroller, if he has determined that an overpayment was made, to credit the taxpayer with the amount of the overpayment; provided, the taxpayer consents to the credit. Amoco did not consent. It requested the money be refunded pursuant to Article 1.11A, Tax Refunds. This Article then provided:[2]

(1) This Article applies to any . . franchise . . . tax or fee collected or administered by the Comptroller of public Accounts . . . .

(2) When *the Comptroller determines* that any person, firm or corporation has through mistake of law or fact overpaid the amount due the State on any tax collected or administered by the Comptroller, the Comptroller *may refund such overpayment* by warrant on the State Treasury from any funds appropriated for such purpose. (emphasis added).

The hearing examiner, in the findings of the redetermination hearing for 1962 taxes, denied Amoco's request to set aside the deficiency and to refund the $295,051.27 withheld by the Comptroller. The Comptroller approved these findings and this order became final on March 21, 1975. On the same day Amoco brought suit to determine the money was unlawfully withheld and that it had overpaid the 1962 taxes by $108,856.92 and for a refund of that amount.

The State contends Amoco cannot maintain this suit because, among other things, Amoco has not complied with Article 1.05. This Article provides that a taxpayer may challenge the assessment of taxes if (1) the taxpayer pays the taxes, (2) accompanies the payment with a written protest setting out fully and in detail each and every ground or reason why it is contended that such demand is unlawful or unauthorized, and (3) files suit within 90 days after the payment in a court of competent jurisdiction in Travis County.

In *Dan Ingle, Inc. v. Bullock,* 578 S.W.2d 193 (Tex.Civ.App.–Austin 1979, writ ref'd), the taxpayer brought suit seeking to set aside the Comptroller's determination that the taxpayer was delinquent in payment of sales taxes. The taxpayer had not complied with Article 1.05 (payment of taxes accompanied by written protest) but attempted the judicial review under the provisions of section 19 of Article 6252–13a, T.R.C.S. (Administrative Procedure and Texas Register Act). The court held that because the

---

1. All statutory references are to Vernon's Annotated Civil Statutes, Taxation General, unless otherwise indicated.

2. Article 1.11A has since been extensively amended.

taxpayer had not complied with Article 1.05, the trial court was without jurisdiction to hear and decide the merits of the case. See *Robinson v. Bullock*, 553 S.W.2d 196 (Tex.Civ.App.–Austin 1977, writ ref'd n.r. e.), cert. denied, 436 U.S. 918, 98 S.Ct. 2264, 56 L.Ed.2d 759 (1978).

■ By Article 1.05 and its predecessor statute, Article 7057b, the Legislature provided a special method to enable taxpayers, who question validity of a tax, to bring suit against the State in an effort to recover taxes paid under protest. These statutes created a right not existing at common law and prescribed a remedy to enforce the right. Thus, the courts may act only in the manner provided by the statute which created the right. *Union Central Life Ins. Co. v. Mann*, 138 Tex. 242, 158 S.W.2d 477 (1941). We hold the trial court was without jurisdiction to hear and decide the merits of Amoco's suit.[3]

Amoco contends it never had an opportunity to pay under protest as the Comptroller deducted the amount it claimed as an underpayment for 1962 from the overpayment for subsequent years. Therefore, it could not comply with Article 1.05 and had no way to seek judicial review. We do not agree. As to its inability to pay under protest, we quote from the deposition testimony of Mr. Marlar of Amoco's Tax Department:

> We did not concede the deficiency for '62. It would have been a useless act for us to pay the money that the deficiency set up for '62 and then turn around and receive the same amount of money under the $718,000 or whatever that number was. It was–you know, that was just changing hands, changing money for nothing.
>
> We were told–we were told that we were entitled to $718,000, which was the refund. They turned around and said, "Well, we're going to refund you $423,-000." And we said, "Well, we're not conceding that we owe you that other mon-

ey. It's useless for us to get the money back and turn around and pay it to you again just to satisfy this circuitous route of having to pay it under protest."

Amoco urges that Article 1.05 was unavailable to it because the Comptroller paid himself when it credited the overpayment of 1963 and following years to the deficiency, as determined by the Comptroller, for 1962. Also, Amoco had on file with the Comptroller when the credit was made, a detailed memorandum of the errors made by the Comptroller in computing the 1962 deficiency. We do not reach the question of whether the offset and filed memorandum would be sufficient to meet the first two requirements of Article 1.05 because suit was not filed within 90 days after the offset was taken. Had Amoco determined, when the offset was taken, that Article 1.05 was not available because the Comptroller paid himself, it should have complied with the remaining requirements of Article 1.05.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

---

3. Article 1.11A was amended, effective August 27, 1979, to provide an appeal from the final decision of the Comptroller.