JIM WELLS COUNTY and Premont
Independent School District,
Appellants,

v.

EL PASO PRODUCTION OIL AND
GAS COMPANY; El Paso Production
Oil and Gas USA, L.P.; El Paso CGP
Company; Coastal Oil and Gas Corpo-
ration; The Coastal Corporation;
Coastal States Trading, Inc.; Coastal
States Crude Gathering Company;
Coastal Gas Marketing Company;
Coastal Limited Ventures, Inc.; and
El Paso Merchant Energy Company,
Appellees

and

Brooks County and Brooks County
ISD, Appellants,

v.

El Paso Production Oil and Gas Compa-
ny; El Paso Production Oil and Gas
USA, L.P.; El Paso CGP Company;
Coastal Oil and Gas Corporation; The
Coastal Corporation; Coastal States
Trading, Inc.; Coastal States Crude
Gathering Company; Coastal Gas
Marketing Company; Coastal Limited
Ventures, Inc.; and El Paso Merchant
Energy Company, Appellees,

and

Brooks County and Brooks
Independent School
District, Appellants

v.

Texaco E & P, Inc. and Shell Western
E & P, Inc., Appellees,

and

Duval County; San Diego Independent
School District; and Freer Indepen-
dent School District, Appellants,

v.

Shell Western E & P, Inc., Appellee,

and

Duval County; San Diego Independent
School District; and Freer Indepen-
dent School District, Appellants,

v.

Conoco, Inc.; Continental Oil Company;
Brandywine Industrial Gas; Conoco-
Phillips Company; Phillips Petroleum
Company; El Paso Production Oil
and Gas Company; El Paso Produc-
tion Oil and Gas USA, L.P.; El Paso
CGP Company; Coastal Oil and Gas
Corporation; The Coastal Corpora-
tion; Coastal States Trading, Inc.;
Coastal States Crude Gathering Com-
pany; Coastal Gas Marketing Compa-
ny; Coastal Limited Ventures, Inc.;
and El Paso Merchant Energy Com-
pany, Appellees,

and

Jim Hogg County and Jim Hogg
Independent School District,
Appellants,

v.

Chevron U.S.A., Inc. a/k/a Chevron
Products Company, Appellee,

and

Jim Wells County and Premont
Independent School District,
Appellants,

v.

Anadarko Petroleum Corporation and
Anadarko Holding Company f/k/a Un-
ion Pacific Minerals, Inc. and f/k/a
Union Pacific Resources Group, Inc.,
Appellees,

and

Webb County, Appellant,

v.

Chevron U.S.A., Inc. a/k/a Chevron Products Company; Texaco E & P, Inc.; and Four Star Oil & Gas Company, Appellees,

and

Webb County, Appellant,

v.

Conoco Inc.; Continental Oil Company; Brandywine Industrial Gas; Conoco-Phillips Company; Phillips Petroleum Company; El Paso Production Oil and Gas Company; El Paso Production Oil and Gas USA, L.P.; El Paso CGP Company; Coastal Oil and Gas Corporation; The Coastal Corporation; Coastal States Trading, Inc.; Coastal States Crude Gathering Company; Coastal Gas Marketing Company; Coastal Limited Ventures, Inc.; and El Paso Merchant Energy Company, Appellees,

and

Zapata County and Zapata Independent School District, Appellants,

v.

Conoco Inc.; Continental Oil Company; Brandywine Industrial Gas; Conoco-Phillips Company; Phillips Petroleum Company; El Paso Production Oil and Gas Company; El Paso Production Oil and Gas USA, L.P.; El Paso CGP Company; Coastal Oil and Gas Corporation; The Coastal Corpora-

tion; Coastal States Trading, Inc.; Coastal States Crude Gathering Company; Coastal Gas Marketing Company; Coastal Limited Ventures, Inc.; and El Paso Merchant Energy Company, Appellees,

and

Zapata County and Zapata Independent School District, Appellants,

v.

Chevron U.S.A., Inc. a/k/a Chevron Products Company; Shell Western E & P, Inc.; Anadarko Petroleum Corporation; and Anadarko Holding Company f/k/a Union Pacific Minerals, Inc. and f/k/a Union Pacific Resources Group, Inc., Appellees,

and

Hidalgo County, Texas, Appellant,

v.

Texaco, Inc., a surviving subsidiary of merger between Texaco, Inc. and Chevron Inc.; TotalFinaElf E & P USA Inc.; Kerr–McGee Oil & Gas Onshore, L.L.C.; Shell Western E & P, Inc.; and El Paso Production Oil & Gas Company, Appellees,

and

Edinburg Consolidated Independent School District, Appellant,

v.

Fina Oil and Chemical Company; Atofina Petrochemicals, Inc.; Fina, Inc.; TotalFinaElf Gas & Power North America, Inc.; Fina Natural Gas Company; Mokeen Oil Company; Conoco, Inc.; Continental Oil Company; Brandywine Industrial Gas, Inc.; Shell Oil Company; Shell Western E & P, Inc.; Shell Gas Trading Company; El Paso Production Oil and Gas Company; El Paso Production Oil and Gas USA, L.P.; El Paso CGP Company; IBC Petroleum, Inc.; Tex-

as Independent Exploration, Inc.; Sun Operating Limited Partnership; Oryx Energy Company; ANR Production Company; Coastal Oil and Gas Corporation; The Coastal Corporation; Coastal States Trading, Inc.; Coastal States Crude Gathering Company; Coastal Gas Marketing Company; Coastal Limited Ventures, Inc.; El Paso Merchant Energy Company; American Exploration Company; Contract Energy, L.L.C.; EOG Resources, Inc.; Arco Oil & Gas Co.; Cody Energy LLC; Samedan Oil Corporation; Cabot Oil & Gas Corporation; Vastar Resources, Inc.; BP America Production Company; Kerr–McGee Oil & Gas Onshore LLC; Mobil Producing TX. & N.M. Inc.; Chevron U.S.A. Inc.; Texaco, Inc.; and Socony Mobil Company, Inc., Appellees,

and

**McAllen Independent School District, Appellant,**

v.

Fina Oil and Chemical Company; Altofina Petrochemicals, Inc.; Fina, Inc.; TotalFinaElf Gas & Power North America, Inc.; Fina Natural Gas Company; TotalFinaElf E & P USA, Inc.; Total E & P USA, Inc.; Denovo Oil & Gas, Inc.; and Virtex Petroleum Company, Inc., Appellees,

and

**Kleberg County and Kingsville Independent School District, Appellants,**

v.

Atofina Petrochemicals, Inc. f/k/a Fina Oil & Chemical Co.; Total Fina Elf Holdings USA, Inc.; Anadarko Petroleum Corporation; and Anadarko Holding Company f/k/a Union Pacific Minerals, Inc. and f/k/a Union Pacific Resources Group, Inc., Appellees,

and

**Kleberg County and Kingsville Independent School District, Appellants,**

v.

El Paso Production Oil and Gas Company; El Paso Production Oil and Gas USA, L.P.; El Paso CGP Company; Coastal Oil and Gas Corporation; The Coastal Corporation; Coastal States Trading, Inc.; Coastal States Crude Gathering Company; Coastal Gas Marketing Company; Coastal Limited Ventures, Inc.; and El Paso Merchant Energy Company, Appellees,

and

**Willacy County, Appellant,**

v.

El Paso Production Oil and Gas Company; El Paso Production Oil and Gas USA, L.P.; El Paso CGP Company; Coastal Oil and Gas Corporation; The Coastal Corporation; Coastal States Trading, Inc.; Coastal States Crude Gathering Company; Coastal Gas Marketing Company; Coastal Limited Ventures, Inc.; and El Paso Merchant Energy Company, Appellees,

and

Edcouch–Elsa Independent School District; La Villa Independent School District; Progresso Independent School District; Weslaco Independent School District; City of La Joya; City of Edinburg; City of Mercedes; and City of Penitas, Appellants,

v.

Chevron U.S.A., Inc. a/k/a Chevron Products Company; Texaco E & P, Inc.; Shell Western E & P, Inc.; Atofina Petrochemicals, Inc. f/k/a Fina Oil & Chemical Co.; and Total Fina Elf Holdings USA, Inc., Appellees,

and

Kenedy County, Appellant,

v.

El Paso Production Oil and Gas Company; El Paso Production Oil and Gas USA, L.P.; El Paso CGP Company; Coastal Oil and Gas Corporation; The Coastal Corporation; Coastal States Trading, Inc.; Coastal States Crude Gathering Company; Coastal Gas Marketing Company; Coastal Limited Ventures, Inc.; and El Paso Merchant Energy Company, Appellees.

Nos. 01–04–01277–CV to 01–04–01287–CV; 01–04–01326–CV to 01–04–01333–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 26, 2006.

John F. Carroll, Jon Christian Amberson, Jon Christian Amberson, P.C., San Antonio, Juan Rocha, Rolando Cantu, Rolando Cantu & Associates, Edinburg, for appellants.

Lynne Liberato, Hayes & Boone, L.L.P., Jasper G. Taylor III, Daniel M. McClure, Katherine Mackillop, Peter A. Stokes, Fulbright & Jaworski L.L.P., Houston, W. Wendell Hall, Fulbright & Jaworski L.L.P., San Antonio, Peter A. Lowy, Houston, William W. Kilgarlin, William Ikard, Laurie Ratliff, Ikard Wynne & Ratliff L.L.P., Austin, for appellees.

Panel consists of Justices TAFT, JENNINGS, and HANKS.

## OPINION

GEORGE C. HANKS, JR., Justice.

The appellant counties and school districts (collectively referred to as "the Taxing Units") filed claims in the trial courts for fraud and related causes of action against the appellees (collectively referred to as "the Oil Companies") arising out of an alleged scheme to undervalue oil and gas reserves for ad valorem tax purposes.[1] The trial court granted the Oil Companies' plea to the jurisdiction and dismissed the Taxing Units' cases for want of jurisdiction because they did not exhaust an administrative remedy before filing suit.

In four points of error, the Taxing Units contend that (1) the district courts have jurisdiction over their common-law remedy for fraud, (2) the district courts are not divested of jurisdiction by the alleged existence of a Tax Code remedy for fraud for which the Appraisal Review Board has jurisdiction, (3) the Oil Companies seek to have this Court expand the Tax Code by creating a remedy before the Appraisal Review Board, and (4) the Tax Code provides no pervasive regulatory scheme encompassing the Taxing Units' causes of action. We affirm the trial court's order dismissing the causes of action.

### Background[2]

In 19 separate suits, the Taxing Units sued the Oil Companies alleging "fraud

1. The presiding judges for the Fourth, Fifth, Sixth, and Seventh Judicial Administrative Regions were asked to consolidate all of the South Texas and West Texas cases under Rule 11 of the Texas Rules of Judicial Administration before a single pre-trial judge. Following a hearing in Austin, the Judges determined that the West Texas cases should be consolidated for hearing before one pre-trial judge and that the South Texas cases pending in the Fourth and Fifth Administrative Judicial Regions should be consolidated before a different pre-trial judge.

 The South Texas cases that are before us were assigned to the Honorable Tracy Christopher, Judge of the 295th Judicial District Court of Harris County.

2. The quotations from the record are found in the *Jim Wells County and Premont Independent School District v. El Paso Production Oil and Gas Company; El Paso Production Oil and Gas USA, L.P.; El Paso CGP Company; Coastal Oil and Gas Corporation; The Coastal Corporation; Coastal States Trading, Inc.; Coastal States Crude Gathering Company; Coastal Gas Marketing Company; Coastal Limited Ventures, Inc.; and El Paso Merchant Energy Company* case and are representative of the pleadings in the 18 companion cases.

and conspiracy to defraud [the Taxing Units] through a series of schemes to manipulate the gas and oil markets in order to underpay Ad Valorem taxes to the taxing authorities. . . ." The Taxing Units alleged that the Oil Companies were conducting "sham sales of gas" amongst each other as well as reselling the gas all in an attempt to devalue their property for ad valorem tax purposes. Specifically, the Taxing Units alleged that

> By selling gas to marketing affiliates, reselling the gas for higher prices through the affiliates and basing appraisals and ad valorem taxes on the lower prices paid and received in the affiliated transaction, or on fictional price calculations which did not equate to fair market value as required by the Leases, [the Oil Companies] knowingly and intentionally defrauded [the Taxing Units].

The Taxing Units asserted that, "through these fraudulent sales and the manipulation of royalties on said sales and resales of gas from the Leases, [the Oil Companies] made false, deceptive and misleading representations to [the Taxing Units] regarding sales of gas covered by the [Leases] and the pricing used to properly appraise the mineral estates." The Taxing Units further alleged that the Oil Companies "failed to disclose that prices were based on sales to affiliates who were in turn reselling the gas for higher prices without adding value to the gas and that [the Oil Companies] devised a formula by which to calculate royalties which did not relate to the economic reality of the sale of gas from the field where the Leases were located." The Oil Companies allegedly "misrepresented prices · and costs, thus causing the fictionally low appraisal and thus incorrect ad valorem taxes to be calculated." The Taxing Units sued for fraud, negligent misrepresentation, and civil conspiracy to commit fraud. *The suit is not one to collect delinquent taxes.* There is no allegation that the Oil Companies failed to pay the taxes assessed them with respect to the oil interests.

When they filed their answers, the Oil Companies also filed pleas to the jurisdiction. The pleas argued that the trial court lacked jurisdiction over the Taxing Units' suits because (1) the Tax Code provides that an Appraisal Review Board has exclusive jurisdiction over challenges to the value of the Oil Companies' property, (2) the remedies for the Taxing Units' claims are exclusive and are contained in the Tax Code, (3) the Taxing Units have not exhausted their administrative remedies under the Tax Code, and (4) the counties lack standing to bring this lawsuit. The trial court granted the pleas to the jurisdiction.

### *In re ExxonMobil Corporation*

In a case with almost identical facts, the Amarillo Court of Appeals recently conditionally granted a petition for writ of mandamus directing the trial court to dismiss the underlying suit. *See In re ExxonMobil Corp.*, 153 S.W.3d 605, 619 (Tex.App.-Amarillo 2004, orig. proceeding). In *ExxonMobil Corp.*, the relators, which consisted of more than 20 owners and operators of oil properties, filed a petition for writ of mandamus after the trial court denied their pleas to the jurisdiction. *Id.* at 607–08. In the underlying suit, Yoakum County and the Denver City and Plains Inde-

pendent School Districts sued 28 owners and operators of oil companies in Yoakum County, asserting causes of action for fraud and conspiracy with respect to the valuation of the properties for ad valorem tax purposes. *Id.* at 608.

In *ExxonMobil,* the taxing units alleged that

the defendant companies, knowing and intending that appraisers rely on [historical sales prices], engaged in a conspiracy and fraud carried out by misrepresentations of the market price for oil through various transactions, including posted price sales; sales of oil to subsidiary or affiliated companies at below-market prices; and "buy/sell" or "swap sales."

*Id.* at 608–09. This conduct allegedly "constituted a 'systematic price undervaluation' that reduced the taxable value of their mineral interests and caused the taxing units to lose tax revenue." *Id.* at 609. The Amarillo Court identified "two threshold conclusions" that guided their disposition of the proceedings.

**Nature of Underlying Suit**

The first threshold conclusion concerned the nature of the underlying suit. *Id.* at 612. The defendant companies classified the taxing units' suit as an ad valorem tax case, and the taxing units called it a fraud and conspiracy case. *Id.* The court noted that the district court would be unable to "adjudicate the claims asserted in the taxing units' pleading and award the relief they seek without determining the market value, for ad valorem tax purposes, of the mineral interests in question." *Id.* (citing TEX. TAX CODE ANN. § 26.09 (Vernon 2001) (entitled "Calculation of Tax")). Relying

on *Ector County v. Stringer,* 843 S.W.2d 477 (Tex.1992), the Amarillo Court of Appeals concluded that

a suit to recover damages measured by the ad valorem taxes not received by a taxing unit because of undervaluation of property necessarily involves substituting the district court's determination of the proper value of the property for that determined by the appraisal district and approved by the appraisal review board. And ... we cannot consider the trial court's jurisdiction over the taxing units' claims here outside the constitutional and statutory provisions governing the appraisal of property for ad valorem purposes.

*Id.* at 613.

**Tax Code Remedy**

The second threshold conclusion reached by the *ExxonMobil* court was that the Tax Code provided a remedy for the taxing units. *Id.* The court recognized that the chief appraiser had a nondiscretionary duty under section 25.21 to add to the appraisal roll real property omitted in any one of the five proceeding years. *Id.* (citing *Atascosa County v. Atascosa County Appraisal Dist.,* 990 S.W.2d 255, 257 (Tex. 1999)). The court concluded that, "for purposes of section 25.21, property 'omitted' from the appraisal roll includes that undervalued by virtue of taxpayer fraud." *Id.* (citing *Beck & Masten Pontiac–GMC, Inc. v. Harris County Appraisal Dist.,* 830 S.W.2d 291, 294–95 (Tex.App.-Houston [14th Dist.] 1992, writ denied) (holding that, when the property assessments were void *ab initio,* the property "escaped taxation.")). The court also noted that section 41.03 provides for a remedy in the event

that the chief appraiser fails to address the allegedly fraudulent activity. *Id.* at 614. Section 41.03 provides that "a taxing unit is entitled to challenge before the appraisal review board...." TEX. TAX CODE ANN. § 41.03 (Vernon 2001). Failing to receive a satisfactory result at the Appraisal Review Board, de novo judicial review of its decision was available. *See id.* §§ 42.031, 42.21, 42.23; *Atascosa County,* 990 S.W.2d at 259.

Once it made these two "threshold conclusions," the Amarillo Court was led to the question of whether the Tax Code's remedies were "the exclusive means by which a taxing unit must address claims of fraud and conspiracy occurring in the appraisal process." *In re ExxonMobil,* 153 S.W.3d at 614.

**Exclusive Remedy**

*ExxonMobil* recognized that, "whether an administrative body has been given the sole authority, or exclusive jurisdiction, to make an initial determination in a dispute depends on statutory interpretation." *Id.* at 615 (citing *Subaru of America, Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212, 221 (Tex.2002)). The court found that "the provisions of the Tax Code expressly provide the necessary authority." *Id.* (citing TEX. TAX CODE ANN. §§ 6.01, 6.03, 23.01, 25.21 and *Atascosa County,* 990 S.W.2d at 257 (Appraisal Review Board is "charged with ensuring that property is properly appraised")). The court stated that it would "defeat the Tax Code's purpose" to deny the appraisal review board and taxing units the power to address and remedy, through Code procedures, fraudulent conduct that reduces the appraised value of the mineral interests below the statutorily-required market price. *Id.* at 615–16. After an examination of the Tax Code and,

after noting the absence of any specific legislative expressions of intent regarding exclusive jurisdiction, the court commented that

> Despite the absence from the Tax Code of specific language so providing, the nature of the governmental function exercised through the Tax Code, the constitutional mandates it implements, its comprehensive and detailed provisions concerning appraisal of property, and its provision of remedies combine to require the conclusion that the Legislature intended the Code procedures to be the exclusive means through which the taxing units may seek a remedy for the injuries caused them by the tortious conduct alleged here.

*Id.* at 618. The Amarillo court concluded that the taxing units had failed to exhaust "remedies the Legislature has made exclusive under the Tax Code, depriving the trial court of jurisdiction." *Id.*

Here, with essentially the same set of facts, we are asked to determine whether the trial court erred when it granted the Oil Companies' pleas to the jurisdiction and dismissed the Taxing Units' cases for want of jurisdiction because they did not exhaust an administrative remedy before filing suit.

### Standard of Review for Plea to the Jurisdiction

 The existence of subject-matter jurisdiction is a question of law. *State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez,* 82 S.W.3d 322, 327 (Tex.2002). Therefore, we review de novo the trial court's ruling on a plea to the jurisdiction. *Id.* In deciding a plea to the jurisdiction, a court may not consider the merits of the case, but only the plaintiff's

pleadings and the evidence pertinent to the jurisdictional inquiry. *County of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex. 2002).

## Ad Valorem Taxes

The Texas Constitution generally authorizes taxes on property in proportion to the property's value. TEX. CONST. art. VIII, § 1(b); *Tex. Mun. League Intergovernmental Risk Pool v. Tex. Workers' Comp. Com'n,* 74 S.W.3d 377, 387 (Tex. 2002). An "ad valorem" tax is a tax on property at a certain rate based on the property's value. *See generally* 71 AM.JUR. 2D *State & Local Taxation* § 20 (1973); *Tex. Mun. League Intergovernmental Risk Pool,* 74 S.W.3d at 387. Obligations to pay, as well as exemptions from, ad valorem taxes are derived entirely from constitutional and statutory provisions. *City of Houston v. Northwood Mun. Util. Dist. No. 1,* 73 S.W.3d 304, 311 (Tex.App.-Houston [1st Dist.] 2001, pet. denied). The amount of ad valorem taxes owed is based on the appraised value of the property.

Section 23.175 of the Texas Tax Code sets forth the method by which the mineral properties must be appraised. Section 23.175(a) provides in part that,

> if a real property interest in oil or gas in place is appraised by a method that takes into account the future income from the sale of oil or gas to be produced from the interest, the method must use the average price of the oil or gas from the interest for the preceding year as the price at which the oil or gas produced from the interest is projected to be sold in the current year of the appraisal.

TEX. TAX CODE ANN. § 23.175 (Vernon 2001).

## Common Law Remedy

In point of error one, the Taxing Units argue that they have a common law remedy for fraud and the district courts have jurisdiction of these claims. The Taxing Units reference a 19th century United States Supreme Court case for the "unquestioned principal of law" that a sovereign has the right to pursue common law remedies against tortfeasors in its own courts. *See Cotton v. United States,* 52 U.S. 229, 230, 11 How. 229, 13 L.Ed. 675 (1850).

A municipal corporation's power to tax property is derived solely "by virtue of authority delegated to them by the state." *Texas & Pac. Ry. Co. v. City of El Paso,* 126 Tex. 86, 85 S.W.2d 245, 247 (1935). Without a common law right to tax, the Taxing Units have no common law right to sue for damages for an alleged loss in tax revenues. *See Bullock v. Amoco Prod. Co.,* 608 S.W.2d 899, 901 (Tex. 1980) (with statutory right and remedy not existing at common law, courts act in manner provided by statute). When considering a claim premised on a right created entirely by statute, "courts may act only in the manner provided by the statute which created the right." *Id.*

Market value for ad valorem tax purposes is determined by appraisal districts and Appraisal Review Boards. TEX. TAX CODE ANN. §§ 6.01(b); 41.01(a) (Vernon 2001). The Taxing Units' claim would require the trial court to substitute its determination of the market value of the Oil Companies' property for the determination of the appraisal districts and Appraisal Review Boards. *See In re ExxonMobil,* 153 S.W.3d at 613. As the *ExxonMobil* court stated, "we cannot consider the trial court's jurisdiction over the taxing units'

claims here outside the constitutional and statutory provisions governing appraisal of property for ad volorem tax purposes." *Id.* at 613. The Taxing Units cannot avoid the procedures and remedies in the Tax Code by characterizing a statutory tax case as a common law fraud case. *See id.* Accordingly, we overrule point of error one.

## Tax Code Remedy

In point of error two, the Taxing Units contend that the district courts are not divested of jurisdiction by the alleged existence of a Tax Code remedy for fraud for which the Appraisal Review Board of each county has jurisdiction, and which remedy the Taxing Units have failed to exhaust prior to filing suit. And, in point of error three, the Taxing Units argue that the Oil Companies "seek to have the court expand the Tax Code, creating a remedy before the Appraisal Review Board, by implying into Tax Code section 25.21 a private cause of action that is not found in the statute's wording or sanctioned by the statute itself in order to defeat the jurisdiction of the district court."

■ The Texas Constitution provides that the trial courts have jurisdiction "except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." TEX. CONST. art. V, § 8. An agency has exclusive jurisdiction when "a pervasive regulatory scheme indicates that [the Legislature] intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed." *In re Entergy Corp.*, 142 S.W.3d 316, 322 (Tex.2004).

■ The Tax Code is a classic example of a "pervasive regulatory scheme" evidencing a legislative intent to vest the responsible agency with exclusive jurisdiction, in this case the Appraisal Review Board. One of the Legislature's primary purposes in enacting the Tax Code was to establish a system that yields fair and uniform valuations across taxing units. *Watson v. Robertson County Appraisal Review Bd.*, 795 S.W.2d 307, 310 (Tex. App.-Waco 1990, no writ). To accomplish this purpose, the Legislature abolished the appraisal authority of the taxing units, established a centralized appraisal district for every county, and charged the appraisal districts with the exclusive responsibility "for appraising property in the district for ad valorem tax purposes of each taxing unit that imposes ad valorem taxes on property in the district." TEX. TAX CODE ANN. § 6.01. With this shift of power, the taxing units were sidelined in the appraisal process, except for certain specifically circumscribed rights with respect to contested appraisals before the Appraisal Review Board and rights of appeal from decisions of that tribunal.

Accordingly, because the Tax Code comprises precisely the type of "comprehensive legislative scheme" that courts, including the *ExxonMobil* court routinely hold to be exclusive and, because the Supreme Court of Texas has already concluded that the Tax Code's detailed provisions for adjudicating tax disputes represent a "comprehensive tax scheme," we overrule point of error two. *See ExxonMobil,* 153 S.W.3d at 618; *see also Atascosa County,* 990 S.W.2d at 259.

■ Alternatively, the Taxing Units argue that the Legislature has not given them a remedy. We disagree.

In fact, the Tax Code provides at least two remedies for any alleged fraud by taxpayers which results in undervaluation of property. First, the Taxing Units may file a challenge to the Appraisal Review Board's valuation of a category of properties, which here would be oil and gas properties. TEX. TAX CODE ANN. § 41.03(a)(1)

(Vernon 2001). Alternatively, the Taxing Units could have petitioned the chief appraiser to void the original appraisal and then back-appraise the properties in accordance with section 25.21 of the Tax Code. TEX. TAX CODE ANN. § 25.21 (Vernon 2001); *In re ExxonMobil*, 153 S.W.3d at 613–14; *Beck & Masten*, 830 S.W.2d at 294–95.[3]

The Taxing Units argue that the amendment to section 25.21 that changed the wording "escaped taxation" to "omitted" property, renders 25.21 inapplicable to the facts before us. We disagree. Both *In re ExxonMobil* and *Beck & Masten* considered the very argument presented by the Taxing Units, and both courts concluded that section 25.21's application is determined by the allegation of fraud, not the characterization of the result. *See In re ExxonMobil*, 153 S.W.3d at 613 ("For purposes of 25.21, property 'omitted' from the appraisal roll includes that undervalued by virtue of taxpayer fraud."); *see also Beck & Masten*, 830 S.W.2d at 295 (fraud caused the initial assessment to be void *ab initio*, and the property escaped taxation for purposes of section 25.21).

Accordingly, we overrule points of error two and three.

### Pervasive Regulatory Scheme

In point of error four, the Taxing Units contend that "the Tax Code provides no pervasive regulatory scheme encompassing their causes of action, the purpose and effectiveness of which statutory scheme would be defeated by allowing the trial courts to try these cases as common law fraud actions."

The *ExxonMobil* court held that three factors "combine to require the conclusion that the Legislature intended the Code procedures to be the exclusive means through which the taxing units may seek a remedy for the injuries caused them by the tortious conduct alleged here." *In re ExxonMobil*, 153 S.W.3d at 618. These factors are: (1) the constitution's mandate for a single appraisal of property, (2) the Tax Code provisions relating to the [Appraisal Review Board's] jurisdiction, and (3) the Tax Code's overall, comprehensive and detailed scheme regarding appraisal and remedies. *Id.*

For the reasons previously discussed herein, the Taxing Units have not persuaded us that we should reach a different conclusion than that of the *ExxonMobil* court. Accordingly, we overrule point of error four.

### Conclusion

We agree with the summation found in one of the briefs filed by the Oil Companies. It stated that,

accepting [the Taxing Units'] novel theory would undermine the Tax Code's processes, strip the Appraisal Review Boards of their sovereignty over property tax appraisals and their role in valuation disputes, disrupt a well-thought-out administrative system that has successfully recovered over $5 billion in fraudulent underpayments in Harris County alone, and open the floodgates to a new era of judicially-created ad valorem tax suits, in direct contravention of the Legislature's intent.

We decline to do so. Accordingly, we affirm the trial court's order dismissing the causes of action.

Justice JENNINGS, concurring.

---

**3.** In *Beck & Masten Pontiac–GMC, Inc. v. Harris County Appraisal Dist.*, 830 S.W.2d 291 (Tex.App.-Houston [14th Dist.] 1992, writ denied), the Appraisal Review Board reappraised the value of the car dealership's inventory after finding evidence that the dealership had misrepresented the value of the cars on its lot. *Id.* at 294–95. The 14th Court of Appeals held that fraud by the taxpayer voided *ab initio* the initial assessment by the appraisal district. *Id.* at 295.

TERRY JENNINGS, Justice, concurring.

In their second amended plea to the jurisdiction, appellees, the oil companies, sought to dismiss the lawsuits of appellants, the taxing units, on the ground that, under the Texas Tax Code,[1] the pertinent appraisal review boards have exclusive jurisdiction over the claims of the taxing units. The oil companies argue that the trial court did not have subject matter jurisdiction over the claims of the taxing units because the units did not exhaust their administrative remedies with the appraisal review boards before filing their lawsuits in various district courts. Alternatively, the oil companies assert that there is no basis for original jurisdiction in the district courts over the claims of the taxing units.

In four issues, the taxing units argue that the trial court erred in granting the plea to the jurisdiction because the trial court had original jurisdiction over their "common law remedy," their "cause of action" is not found in the Tax Code, and the Tax Code "is not a 'pervasive regulatory scheme' meant to vest exclusive jurisdiction of all matters pertaining to property taxes" with appraisal review boards.

## Exclusive Jurisdiction

Our analysis as to whether an entity such as an appraisal review board has exclusive jurisdiction over certain administrative determinations must begin with a recognition of the presumption that Texas courts are authorized to resolve disputes. *In re Entergy*, 142 S.W.3d 316, 322 (Tex. 2004). A district court's jurisdiction "consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred ... on some other court, tribunal, or administrative body." TEX.CONST.

art. V, § 8. Thus, these courts of general jurisdiction will "generally have subject matter jurisdiction over a dispute absent a showing to the contrary." *In re Entergy*, 142 S.W.3d at 322; *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex. 2000). "[A] similar presumption does not exist for administrative agencies, which may exercise only those powers the law confers upon them in clear and express statutory language and those reasonably necessary to fulfill a function or perform a duty that the Legislature has expressly placed with the agency." *In re Entergy Corp.*, 142 S.W.3d at 322. "Courts will not imply additional authority to agencies, nor may agencies create for themselves any excess powers." *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 220 (Tex. 2002).

Under the exclusive jurisdiction doctrine, "the Legislature grants an administrative agency the *sole* authority to make an initial determination in a dispute." *Subaru of Am., Inc.*, 84 S.W.3d at 221. The Texas Supreme Court has explained that "[a]n agency has exclusive jurisdiction 'when a pervasive regulatory scheme indicates that [the Legislature] intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed.'" *Id.* (quoting Andrew G. Humphrey, Comment, *Antitrust Jurisdiction and Remedies in an Electric Utility Price Squeeze*, 52 U.CHI. L.REV. 1090, 1107 n. 73 (1985)). If an agency has exclusive jurisdiction, typically, "a party must exhaust all administrative remedies before seeking judicial review of the agency's action." *Id.* "When exhaustion is required, courts have only limited review of the administrative action." *Id.*

Here, "[the]he Texas Constitution creates the obligation to appraise and assess property for purposes of taxation," and the

1. TEX.TAX CODE ANN. §§ 41.01-41.71 (Vernon 2001 & Supp. 2005).

Legislature codified this obligation in the Tax Code. *Atascosa County v. Atascosa County Appraisal Dist.*, 990 S.W.2d 255, 257 (Tex. 1999). All real property, which includes mineral interests, unless exempt, shall be taxed "in proportion to its value, which shall be ascertained as may be provided by law." TEX.CONST. art. VIII, § 1(b). "Taxation shall be equal and uniform." *Id.* § 1(a). Moreover, "all lands and other property not rendered for taxation by the owner thereof shall be assessed at its fair value by the proper officer." *Id.* § 11. The Tax Code creates appraisal districts and requires each district to appraise property for the ad valorem taxing units within the district. TEX. TAX CODE ANN. § 6.01 (Vernon 2001). It also establishes an appraisal review board for each district, which is charged with ensuring that property is properly appraised. *Id.* § 6.41 (Vernon Supp. 2005), § 41.01 (Vernon 2001).

Appraisal review boards shall "determine protests initiated by property owners," "determine challenges initiated by taxing units," and "take any other action or make any other determination that this title specifically authorizes or requires." *Id.* § 41.01(a)(1),(2),(6). Taxing units are entitled to bring challenges of designated actions before the appraisal review board, including challenges to the level of appraisals of any category of property in the district and challenges to an exclusion of property from the appraisal records. *Id.* § 41.03(a) (Vernon 2001). Moreover, Chapter 42 of the Tax Code provides for trial de novo in a district court on appeal of orders of the appraisal review board determining, inter alia, protests of property owners and challenges by taxing units. *Id.* §§ 42.01, 42.02, 42.031 (Vernon 2001). Chapter 43 authorizes suits by taxing units against the appraisal district to compel a district's compliance with Tax Code provisions, rules of the Texas Comptroller, or other applicable law. *Id.* § 43.01 (Vernon 2001). Thus,

as quoted in the majority opinion, the Amarillo Court of Appeals concluded that

> Despite the absence from the Tax Code of specific language so providing, the nature of the governmental function exercised through the Tax Code, the constitutional mandates it implements, its comprehensive and detailed provisions concerning appraisal of property, and its provision of remedies combine to require the conclusion that the Legislature intended the Code procedures to be the exclusive means through which the taxing units may seek a remedy for the injuries caused them by the tortious conduct alleged here.

*In re ExxonMobil Corp.*, 153 S.W.3d 605, 618 (Tex.App.—Amarillo 2004, orig. proceeding). I agree with this conclusion.

Here, specifically, the taxing units allege that the oil companies defrauded them by manipulating reported sales prices so as to undervalue oil and gas reserves. The Tax Code provides that if real property interest in oil and gas is appraised by a method that takes into account future income from the sale of oil and gas to be produced from the interest, "the method must use the average price of the oil and gas from the interest for the preceding year as the price at which the oil or gas produced from the interest is projected to be sold in the current year of the appraisal." TEX.TAX CODE ANN. § 23.175 (Vernon 2001). Although the taxing units allege fraud in their lawsuits against the oil companies, the entire basis of their fraud claims, as asserted in their briefing to this Court, is that the oil companies "manipulated the Texas Tax Code so as to produce significant undervaluations of their oil and gas reserves for the purposes of ad valorem (property) taxes." As noted above, the Tax Code specifically provides that the taxing units are entitled to make such challenges in front of the pertinent appraisal review boards, and

the boards have the duty to determine such challenges. *Id.* §§ 41.01(a), 41.03.

Accordingly, I would hold that the pertinent appraisal review boards in this case had exclusive jurisdiction over the taxing units' claims, which actually constitute a challenge to the appraised values of the oil companies' oil and gas reserves for the purpose of ad valorem taxes. Based on this holding, I would overrule the second, third, and fourth issues of the taxing units and affirm the order of the trial court granting the oil companies' plea to the jurisdiction.

### Original Jurisdiction

In additional briefing to the trial court in support of their second amended plea to the jurisdiction, the oil companies asserted that there is "no such thing as a common law action for collecting taxes." The taxing units, in their first issue, argue that the trial court erred in granting the oil companies' plea to the jurisdiction on the grounds that "they have no common law right to sue for damages arising from fraud." On appeal, certain oil companies contend that "the Legislature has not given the district courts original jurisdiction to determine appraised values of property in disregard of the official appraisals of the appraisal districts." The other oil companies argue that because no Texas court "has ever recognized a common law cause of action for damages resulting from an underpayment of taxes," this Court "should affirm on grounds that the district court is without original jurisdiction." They further argue that "because there is no basis for original jurisdiction, the Court need not reach the issue of exclusive jurisdiction to affirm."

Here, the parties' arguments depend on how the claims of the taxing units are characterized. The taxing units allege that they were unlawfully deprived of tax revenue through the fraudulent actions of the oil companies. The oil companies characterize the claims simply as an action to recover underpaid taxes. Regardless of how the claims are characterized, as noted above, the trial court did not err in granting the oil companies' plea to the jurisdiction on the grounds that the pertinent appraisal review boards in this case had exclusive jurisdiction over the claims of the taxing units. Thus, it is not necessary for this Court to address the taxing units' first issue, and counsel for certain oil companies conceded this point at oral argument.

### Conclusion

Accordingly, I concur in the judgment of the Court.