Opinion filed November 7, 2019



**In The**

# Eleventh Court of Appeals

_____

## No. 11-19-00097-CV

_____

## KINDER MORGAN SACROC, LP; KINDER MORGAN CO2 CO., LP; KINDER MORGAN PRODUCTION CO., LP; AND KINDER MORGAN PRODUCTION CO., LLC, Appellants

## V.

## SCURRY COUNTY; SNYDER INDEPENDENT SCHOOL DISTRICT; SCURRY COUNTY JUNIOR COLLEGE DISTRICT D/B/A WESTERN TEXAS COLLEGE; AND SCURRY COUNTY HOSPITAL DISTRICT D/B/A COGDELL MEMORIAL HOSPITAL, Appellees

**On Appeal from the 132nd District Court**
**Scurry County, Texas**
**Trial Court Cause No. 26387**

## O P I N I O N

This appeal arises out of a proceeding wherein several governmental entities are seeking to have mineral interests reappraised by the county appraisal review board. Appellees, Scurry County, Snyder Independent School District, Scurry

County Junior College District d/b/a Western Texas College, and Scurry County Hospital District d/b/a Cogdell Memorial Hospital, each filed a challenge to the appraisal roll for mineral interest property located in Scurry County, including the mineral interests of Appellants, Kinder Morgan SACROC, LP; Kinder Morgan CO2 Co., LP; Kinder Morgan Production Co., LP; and Kinder Morgan Production Co., LLC. Appellees filed these challenges with the Scurry County Appraisal Review Board. After the Appraisal Review Board denied the challenges, Appellees filed a petition for review and for mandamus relief in the district court. Appellees requested that the district court "fix" the correct value of Appellants' mineral interests and require the Appraisal Review Board to reappraise the mineral interests. More than one hundred days after being served with the original petition, Appellants filed a motion to dismiss pursuant to the Texas Citizens Participation Act. TEX. CIV. PRAC. & REM. CODE ANN. ch. 27 (West 2015) (the TCPA).[1] The trial court denied the motion as untimely.

In their first issue, Appellants assert that the trial court erred when it determined that the motion to dismiss was untimely. Alternatively, Appellants contend in their second issue that the trial court abused its discretion when it found that Appellants failed to demonstrate good cause to extend the time to file the motion to dismiss. We affirm the trial court's denial of Appellants' motion to dismiss.

---

[1]The Texas legislature amended the TCPA effective September 1, 2019. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 1–9, 12 (H.B. 2730) (to be codified at TEX. CIV. PRAC & REM CODE ANN. §§ 27.001, .003, .005–.007, .0075, .009–.010). Because the underlying lawsuit was filed prior to September 1, 2019, the law in effect before September 1 applies. *See id.* §§ 11–12. For convenience, all citations to the TCPA in this opinion are to the version of the statute prior to September 1, 2019. *See* Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961–64, amended by Act of May 24, 2013, 83d Leg., R.S., ch. 1042, 2013 Tex. Gen. Laws 2499–2500.

*Background Facts*

Pursuant to Section 23.175 of the Tax Code, the Texas comptroller has adopted a method to appraise the value of mineral interests for purposes of assessing ad valorem taxes. *See* TEX. TAX CODE ANN. § 23.175 (West Supp. 2018). The Scurry County Appraisal District hired Thomas Y. Pickett & Co., Inc. (Pickett) to appraise the value of the mineral interests of Appellants and other entities in Scurry County. Stephen Campbell, an appraiser with Pickett, used the method adopted by the comptroller to conduct the appraisals. To complete the appraisals, Campbell relied on information related to production and revenue that the production companies provided to the Texas Railroad Commission and to the comptroller, as well as information related to operating expenses that the production companies provided to him.

Appellees filed petitions with the Appraisal Review Board that challenged both level of the appraisals and the exclusion of "Category G property: Oil and Gas, Mineral, and other subsurface interests" from the appraisal records. Appellees stated in the petitions that the level of appraisals for mineral interests in Scurry County between 2012 and 2018 were "erroneous, inconsistent, and insufficient" and that "property was erroneously and incorrectly omitted (in toto and ab initio) from appraisal."

The Appraisal Review Board held a hearing on Appellees' challenges on June 21, 2018. At the hearing, Appellees indicated that they were not requesting "a complete reappraisal of all of the mineral interests in Scurry County." Rather, Appellees requested, pursuant to Sections 41.03(a)(2) and 25.21 of the Tax Code, "a reappraisal for the 2018 tax year and back appraisal for the prior five years, which would be 2013–2017, only for [Appellants.]"

Appellees represented to the Appraisal Review Board that they hired a commercial appraiser to appraise the value of the mineral interests of the three "top

3

producers" in Scurry County, which included Appellants. Appellees' appraiser obtained information on production and revenue from public filings made by these entities and used that information to appraise the value of the mineral interests using the method adopted by the comptroller. As to Appellants, the appraiser relied on information from public filings made by Appellants with the Securities and Exchange Commission (SEC), the Energy Commission, the Railroad Commission, and the comptroller and from information provided by Appellants to shareholders. According to Appellees, there was "not a very wide variance" in values between the appraisals done by Pickett and the appraisals done by Appellees' expert for the mineral interests of the production companies other than Appellants. However, Appellees' appraiser found a "huge variance" between his appraisal and Pickett's appraisal of the value of Appellants' mineral interests. Appellees estimated that, between 2012 and 2018, the value of Appellants' mineral interests in Scurry County was $14 billion more than the value set by the Appraisal District and that Appellants owed more than $283 million in unpaid taxes.

Campbell, the appraiser for Pickett that appraised Appellants' mineral interests, testified about his experience appraising mineral interests, the comptroller's audits of his appraisals, and the level of consistency between specific appraisals conducted by Campbell and the comptroller or Campbell and another appraiser. He also testified about relative expenses related to different levels of oil recovery, stating that tertiary recovery was the most expensive and that Appellants' oil production in Scurry County was tertiary recovery. Campbell testified that, in his opinion, an appraisal based on information from public sources without any knowledge of the actual rate of decline in production and the actual expenses of production could "badly overstate the value" of the mineral interests.

Appellees' attorney complained that Appellants and the Appraisal District had refused to produce the information that Appellants had provided to Campbell in the

4

appraisal process and that, without the underlying data used by Campbell, it was impossible to determine the reason for the variance between the appraisals by Campbell and by Appellees' appraiser. To explain the variance, Appellees' counsel raised before the Appraisal Review Board the possibility of a misrepresentation by the taxpayer, a misunderstanding between Appellants and Pickett or between Pickett and the Appraisal District, an error in the estimated life of production, or the use of an incorrect discount rate. The Appraisal District's attorney argued that the Appraisal Review Board could "reach" appraisals prior to 2018 only if it found fraud by Appellants and that there had been no evidence of any fraud.

The Appraisal Review Board denied Appellees' challenges to the appraisal roll, and on August 23, 2018, Appellees filed a petition for review and writ of mandamus in the trial court. Appellees asserted that the trial court had jurisdiction to perform a de novo review of the value of Appellants' mineral interests, "to fix the correct values," and to require the Appraisal District to reappraise and back-appraise the mineral interests.

In their petition, Appellees cited *Atascosa County v. Atascosa County Appraisal District*, 990 S.W.2d 255 (Tex. 1999); *In re ExxonMobil Corp.*, 153 S.W.3d 605 (Tex. App.—Amarillo 2004, orig. proceeding [mand. denied]); *Beck & Masten Pontiac-GMC, Inc. v. Harris County Appraisal District*, 830 S.W.2d 291 (Tex. App.—Houston [14th Dist.] 1992, writ denied); and Chapters 25 and 41 of the Tax Code. However, the only facts pleaded by Appellees were that Appellants' "mineral interest real property" in Scurry County "was erroneously and incorrectly omitted from appraisal for years 2018, and 2013-2017," that Appellees timely filed challenge petitions, that the Appraisal Review Board denied the petitions, and that Appellees timely sought de novo review. Appellees requested that the trial court either set the value of Appellants' mineral interests or require the Appraisal District to reappraise the "omitted (*in toto* or *ab initio*)" mineral interests for the year 2018

5

and back-appraise the interest for years 2013 through 2017. In their prayer for relief, Appellants requested that the trial court:

a. fix the accurate and correct appraised values of the mineral interest real property at issue in accordance with the requirements of law;

b. issue a writ of mandamus requiring the Scurry County Appraisal District and Chief Appraiser to immediately re-appraise the mineral interest real property at issue for 2018 and back-appraise the mineral interest real property at issue for years 2013-2017;

c. enter other orders necessary to preserve rights protected by and imposed duties required by the law;

d. award costs of court; and

e. and [sic] such further and other relief, whether at law or in equity, to which [Appellees] show themselves justly entitled.

Appellants were served with the original petition on August 29, 2018. They filed an answer to the original petition on September 24, 2018. Appellants did not file special exceptions to the original petition. On October 9, 2018, Appellants filed a motion to dismiss pursuant to Rule 91a of the Texas Rules of Civil Procedure in which Appellants asserted that Appellees failed to plead a claim that had a basis in law or in fact. Appellants specifically complained that Appellees failed to allege what assets were omitted from appraisal, who was responsible for the error, the factual basis for Appellees' conclusion that property was excluded in any tax year, or what "error" led to the exclusion.

Appellees filed a first amended petition on October 25, 2018. Appellees clarified that they were asserting a claim only under Section 41.03(a)(2) of the Tax Code based on the exclusion of property from the appraisal roll. Appellees alleged that the Appraisal District hired Pickett to appraise the value of mineral interests in Scurry County, the appraisal was done with the use of a formula mandated by the

6

comptroller, and Pickett relied upon information provided by Appellants when it performed the appraisal; that Appellees conducted an appraisal using the same method as Pickett based on information found in Appellants' public filings; and that a comparison of the two appraisals reflected "a variance or omission/exclusion of $14.147 billion in property values for years 2013-2018." Appellees alleged that the variance and the inclusions of improper expenses of Appellants indicated "omissions and exclusions, *in toto* and/or *ab initio*."

Appellees requested that, pursuant to Section 41.03(a)(2) of the Tax Code, the trial court conduct a de novo review of "the insufficient values" of Appellants' mineral interests and that, pursuant to Section 25.21 of the Tax Code, the trial court grant mandamus relief that required the Appraisal District to reappraise and back-appraise Appellants' mineral interests. In their prayer, Appellees requested the same relief as in the original petition.

On November 13, 2018, Appellees filed a second amended petition that contained additional allegations. Appellees alleged that mineral interests of Appellants in Scurry County were "excluded and omitted, *in toto* and/or *ab initio*, from appraisal for years 2018 and 2013-2017" and that the trial court should determine complete and accurate values pursuant to Sections 41.03(a)(2) and 42.24 of the Tax Code. Appellees alleged that "Section 41.03(a)(2) does not require proof or an appearance of fraud, but the appearance of fraud does constitute adequate evidence of omissions *ab initio*." Based on Appellants' refusal to produce documents and the review by experts of Appellants' federal and state filings, Appellees alleged that Appellants knowingly and purposefully provided inaccurate or incomplete information to be relied upon by Pickett in an effort to evade payment of taxes, that Appellants intended that Pickett rely on the misrepresentations, that Pickett did rely upon the misrepresentations, and that the misrepresentations were designed to avoid payment of ad valorem taxes that should have been paid.

7

Appellees sought the same relief in the second amended petition as they sought in the original and first amended petitions and also requested to be allowed "discovery of the information and documents basis" of Pickett's and the Appraisal Review Board's valuations of Appellants' mineral interests.

Appellants withdrew their Rule 91a motion to dismiss and, on December 17, 2018, filed a motion to dismiss pursuant to the TCPA. Appellants asserted that the "claim of taxpayer fraud" in Appellees' second amended petition implicated Appellants' right to speak freely and participate in government for ad valorem tax purposes. Appellants argued that the TCPA motion was timely because Appellees did not allege that the omission of property from the appraisal roll was due to Appellants' fraud until the second amended petition, which, according to Appellants, was therefore the "legal action" that started the TCPA timeline. In the alternative, Appellants asserted that there was good cause for the trial court to extend the time to file the motion to dismiss because the "fraud allegation" had "only just recently appeared."

Appellees objected to the TCPA motion to dismiss as untimely. Appellees contended that the original petition provided Appellants with adequate notice of Appellees' claims and, therefore, triggered the sixty-day time period for a TCPA motion to dismiss to be filed.

In a letter to the parties, the trial court found that Appellants' motion to dismiss was untimely because the only exercise of free speech relied upon by Appellants was their "rendition and valuation of mineral properties for ad valorem tax purposes," which "has been at issue since [Appellees'] initiation of these proceedings." The trial court also determined that there was not good cause to extend the time to file the motion. On March 8, 2019, the trial court signed an order that sustained Appellees' objection and denied Appellants' TCPA motion to dismiss because it was untimely.

*Analysis*

In their first issue, Appellants contend that the trial court erred when it determined that the TCPA motion to dismiss was not timely. We review de novo a trial court's ruling on a motion to dismiss. *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019); *Jordan v. Hall*, 510 S.W.3d 194, 197–98 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (applying de novo standard of review to trial court's determination that TCPA motion was untimely). "In conducting this review, we consider the pleadings and the supporting evidence in the light most favorable to the nonmovant." *ETC Tex. Pipeline, Ltd. v. Addison Exploration & Dev., LLC*, 582 S.W.3d 823, 832 (Tex. App.—Eastland 2019, pet. filed); *see also Jordan*, 510 S.W.3d at 197.

A party triggers the TCPA's dismissal procedure by filing a motion to dismiss. CIV. PRAC. & REM. §§ 27.003(a), .005(b); *S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018). The TCPA requires that the motion be filed no later than the sixtieth day after the date of service of the "legal action." CIV. PRAC. & REM. § 27.003(a). A party who fails to timely file a TCPA motion to dismiss forfeits the protections of the statute. *ETC Tex. Pipeline*, 582 S.W.3d at 833. The trial court, however, may extend the time to file a motion to dismiss on a showing of good cause. CIV. PRAC. & REM. § 27.003(b).

Appellants do not dispute that the original petition was a "legal action" as defined by the TCPA, *see* CIV. PRAC. & REM. § 27.001(6) (defining "legal action" as "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief"), or that they filed the motion to dismiss more than sixty days after they were served with the original petition. Rather, Appellants contend that Appellees' second amended petition alleged a new "legal action" that "reset" the statutory time period for filing the motion to dismiss.

9

An amended pleading that does not add new parties or claims does not restart the deadline for filing a TCPA motion to dismiss, but an amended petition asserting claims based upon new factual allegations may reset a TCPA deadline as to the newly added substance. *ETC Tex. Pipeline*, 582 S.W.3d at 833. However, additional factual details in an amended petition "do not restart the time for filing a motion to dismiss if the same essential factual allegations as to the claim were presented in an earlier petition." *Id.* Likewise, asserting claims in an amended petition that are a "subset" of the claims in the original petition does not reset the deadline to file a TCPA motion to dismiss. *Jordan*, 510 S.W.3d at 198–99; *see also Maldonado v. Franklin*, No. 04-18-00819-CV, 2019 WL 4739438, at *4 (Tex. App.—San Antonio Sept. 30, 2019, no pet. h.) (mem. op.).

Appellees sought the same relief against the same parties based on the same statutory provisions in both the original petition and the second amended petition. Therefore, to determine whether Appellees essentially asserted a new "legal action" in the second amended petition, we must consider the nature of the claim that was pleaded in each petition.[2]

Pleadings are intended to give the other side notice of the party's claims and defenses, as well as notice of the relief sought. *Perez v. Briercroft Serv. Corp.*, 809 S.W.2d 216, 218 (Tex. 1991). "Texas follows a 'fair notice' standard for pleading, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000); *see also*

---

[2]To support the arguments in their briefs, both parties rely on litigation brought by Appellees' counsel on behalf of another client against Appellants in Pecos County and against Pickett in Dallas County. We see nothing in the TCPA that would allow us, or the trial court, to consider claims outside this lawsuit in our determination of the nature of Appellants' claims in this lawsuit. *See* CIV. PRAC. & REM. § 27.006(a) ("In determining whether a legal action should be dismissed under this chapter, the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based."). Therefore, we have not considered claims made in other litigation in our analysis.

TEX. R. CIV. P. 45, 47(a). The purpose of this rule is to give the opposing party information sufficient to prepare a defense. *Auld*, 34 SW.3d at 897 (quoting *Roark v. Allen*, 633 S.W.2d 804, 810 (Tex. 1982)).

"A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim." *Id.* at 897 (quoting *Roark*, 633 S.W.2d at 810). However, the "fair notice" standard does not require a plaintiff to "set out in his pleadings the evidence upon which he relies to establish his asserted cause of action." *Paramount Pipe & Supply Co. v. Muhr*, 749 S.W.2d 491, 494–95 (Tex. 1988). "Even the omission of an element is not fatal if the cause of action 'may be reasonably inferred from what is specifically stated.'" *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (orig. proceeding) (quoting *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993)).

When no special exceptions are filed, we must "construe the pleadings liberally in favor of the pleader." *Auld*, 34 S.W.3d at 897. However, this "liberal construction" does not require us "to read into a petition what is plainly not there." *Bos v. Smith*, 556 S.W.3d 293, 306 (Tex. 2018) (quoting *Heritage Gulf Props., Ltd. v. Sandalwood Apartments, Inc.*, 416 S.W.3d 642, 658 (Tex. App.—Houston [14th Dist.] 2013, no pet.)).

In *Lipsky*, the supreme court considered the application of the "fair notice" standard of pleading in the context of a TCPA motion to dismiss. 460 S.W.3d at 590–91. If the TCPA applies to a legal action, the nonmovant is required to establish by clear and specific evidence a prima facie case of each essential element of a claim in order to survive dismissal. CIV. PRAC. & REM. § 27.005(c). To determine whether the nonmovant met this standard, the trial court is required to consider the pleadings as well as supporting and opposing affidavits stating the facts on which the liability is based. *Id.* § 27.006(a). "[P]leadings that might suffice in a case that does not implicate the TCPA may not be sufficient to satisfy the TCPA's 'clear and specific

11

evidence' requirement." *In re Lipsky*, 460 S.W.3d at 590. Therefore, "mere notice pleading—that is, general allegations that merely recite the elements of a cause of action—will not suffice. Instead, a plaintiff must provide enough detail to show the factual basis for its claim." *Id.* at 590–91.

*Lipsky* stands for the proposition that a pleading that provides "fair notice" of a claim might not contain enough factual detail to constitute "clear and specific evidence" of a prima facie case under the TCPA. *See id.*; *see also Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017) (per curiam) ("Under the [TCPA], more than mere notice pleading is required to establish a plaintiff's prima facie case."). The supreme court did not address in *Lipsky* whether a pleading that meets the "fair notice" standard is sufficient to trigger the statutory sixty-day period for filing a TCPA motion to dismiss. Further, other than when a nonmovant relies on its pleading as clear and specific evidence of a prima facie case of each essential element of a claim, the statute does not impose a heightened pleading requirement. Therefore, we hold that the "fair notice" standard controls our analysis of whether Appellees asserted a new "legal action" in the second amended petition that was not asserted in the original petition. *See Fawcett v. Rogers*, 492 S.W.3d 18, 26 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (applying "fair notice" standard in appeal of trial court's denial of TCPA motion to dismiss to conclude that petition sufficiently put defendants on notice that plaintiff was asserting a defamation per se claim).

In their original petition, Appellees alleged that mineral interests of Appellants in Scurry County had been "erroneously and incorrectly omitted from appraisal" for the years 2013 through 2018. Appellees sought de novo review by the trial court of the value of Appellants' mineral interests in Scurry County. Appellees also requested a writ of mandamus compelling the Appraisal District to reappraise and back-appraise "the omitted (*in toto* or *ab initio*) mineral interest" of

Appellants. Appellants referenced cases dealing with the omission of property from the appraisal roll, as well as Chapters 25 and 41 of the Tax Code. Therefore, to determine the nature of the claims asserted in Appellees' original petition, we must consider the comprehensive statutory scheme in Chapters 25 and 41 of the Tax Code that underlies Appellees' claims. *See Jim Wells Cty. v. El Paso Prod. Oil & Gas Co.*, 189 S.W.3d 861, 871 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (describing Tax Code as "a classic example of a 'pervasive regulatory scheme'").

"An 'ad valorem' tax is a tax on property at a certain rate based on the property's value." *Id.* at 870. The basis for the amount of ad valorem tax owed is the appraised value of the property. *Id.* County-based appraisal districts and appraisal review boards are responsible for the appraisal of real property for ad valorem tax purposes. *City of Austin v. Travis Cent. Appraisal Dist.*, 506 S.W.3d 607, 613 (Tex. App.—Austin 2016, no pet.); *see also* TAX § 6.01(b) (West 2015) (stating that each appraisal district "is responsible for appraising property in the district for ad valorem tax purposes of each taxing unit that imposes ad valorem taxes on property in the district").

"[E]xcept for certain specifically circumscribed rights," the Tax Code's comprehensive legislative scheme generally excludes taxing units, such as Appellees, from the appraisal process. *City of Austin*, 506 S.W.3d at 613–14; (quoting *Jim Wells Cty.*, 189 S.W.3d at 871). However, pursuant to Chapter 41 of the Tax Code, a taxing unit may challenge certain actions by its local appraisal district. *See* TAX §§ 41.03–.07. As relevant here, a taxing unit may challenge "an exclusion of property from the appraisal records." *See id.* § 41.03(a)(2).

The taxing unit initiates the challenge by timely filing a petition with the appraisal review board, *see id.* § 41.04, which conducts a hearing on the petition, *see id.* § 41.05, determines the challenge, and makes its decision by written order, *see id.* § 41.07(a). If the appraisal review board denies the challenge, the taxing unit

13

may appeal to the district court within sixty days of the appraisal review board's order. *Id.* § 42.031(a) (right of appeal by taxing unit), § 42.21 (petition for review). The trial court conducts a de novo review of the challenge and must "try all issues of fact and law raised by the pleadings in the manner applicable to civil suits generally." *Id.* § 42.23(a) (West Supp. 2018). Following the de novo review, the trial court may, among other remedies, "fix the appraised value of property in accordance with the requirements of law" and "enter other orders necessary to preserve rights protected by and impose duties required by law." *Id.* § 42.24(1), (3).

Section 25.21 of the Tax Code requires the chief appraiser of a county who discovers that real property was omitted from an appraisal roll in any one of the five preceding years to "appraise the property as of January 1 of each year that it was omitted and enter the property and its appraised value in the appraisal records." *Id.* § 25.21(a); *see also Brennan v. City of Willow Park*, 376 S.W.3d 910, 918 (Tex. App.—Fort Worth 2012, pet. denied) (noting that remedy provided by Section 25.21 is the entry of "the *property* and its appraised value in the appraisal records"). Omitted property includes property that has been improperly exempted from the tax roll, *Atascosa Cty.*, 990 S.W.2d at 259, and property undervalued due to taxpayer fraud, *In re ExxonMobil*, 153 S.W.3d at 613; *Beck & Masten Pontiac-GMC*, 830 S.W.2d at 295 ("As a result of the fraud perpetrated by appellant's agent, the initial assessment by appellees was void *ab initio*."); *see also Willacy Cty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, 555 S.W.3d 29, 50 (Tex. 2018) (quoting *Beck & Masten Pontiac-GMC*, 830 S.W.2d at 295 n.3, for proposition that Section 25.21 of the Tax Code "provides a remedy for an erroneous appraisal based on property that escaped taxation because of a void assessment arising from taxpayer fraud").

An appraisal district and its chief appraiser have a "nondiscretionary duty" to back-appraise property that has been erroneously omitted from the appraisal roll.

14

*Atascosa Cty.*, 990 S.W.2d at 259. Further, a taxing unit has standing under Chapter 41 of the Tax Code "to challenge the appraisal district's and chief appraiser's failure to back-appraise" improperly excluded property. *Id.* A district court has the power to issue writs of mandamus to compel public officials to perform ministerial duties. *Brennan*, 376 S.W.3d at 926–27 (citing TEX. CONST. art. V, § 8; *In re Nolo Press/Folk Law, Inc.*, 991 S.W.2d 768, 775 (Tex. 1999) (orig. proceeding)) (concluding that district court had jurisdiction over taxpayer's request for mandamus relief to require chief appraiser and members of appraisal review board to void assessments on property).

Appellees alleged in the original petition that Appellants' mineral interests had been erroneously and incorrectly omitted from the appraisal roll and cited to Chapters 25 and 41 of the Tax Code. Pursuant to Chapter 25 and the case law that has interpreted that statute, real property is deemed omitted from the appraisal roll if it was not included on the roll, was improperly exempted from the roll, or was undervalued on the roll due to taxpayer fraud. Appellees' broadly worded original petition, construed liberally, encompassed the omission of Appellants' mineral interests from the appraisal roll based on all of these theories. As noted previously, Appellants did not file special exceptions requesting that Appellees be required to plead with greater specificity.

In the second amended petition, Appellees specifically pleaded for the first time that mineral interests of Appellants in Scurry County were omitted from the appraisal roll due to fraudulent misrepresentations by Appellants. Appellees, however, did not assert an independent common law fraud claim against Appellants. Rather, pursuant to Chapters 25 and 41 of the Tax Code, Appellees alleged that Appellants' mineral interests were undervalued due to fraudulent misrepresentations by Appellants and, therefore, omitted from the appraisal roll. This specific allegation was a subset of the broad allegations asserted in the original petition.

15

Further, the more detailed factual allegations in the second amended petition did not change the essential nature of Appellees' claims or the relief that Appellees sought.

On this record, we conclude that the original petition gave fair notice to Appellants that Appellees claimed that mineral interests of Appellants in Scurry County had been omitted from the appraisal roll and that the second amended petition simply refined and narrowed the original claim. The notice provided by Appellees' original petition included notice to Appellants that their communications with the Appraisal District, as well as Appellants' participation in government for ad valorem tax purposes, were the subject of Appellees' original petition. Therefore, the second amended petition did not reset the statutory time period for filing a TCPA motion to dismiss. *See Jordan*, 510 S.W.3d at 198–99 (concluding deadline for filing TCPA motion to dismiss was not reset by filing of supplemental petition when the factual allegation underlying both the original and supplemental petitions was the purported illegal placement of radio advertisement); *see also Mancilla v. Taxfree Shopping, Ltd.*, No. 05-18-00136-CV, 2018 WL 6850951, at *3 (Tex. App.—Dallas Nov. 16, 2018, no pet.) (mem. op.) ("[T]he filing of an amended pleading that does not alter the essential nature of an action does not restart the deadline."). Because Appellants did not file the motion to dismiss within sixty days of service of the original petition, the trial court did not err when it determined that the motion was untimely. We overrule Appellants' first issue.

In their second issue, Appellants alternatively argue that, if the motion to dismiss was untimely, the trial court erred when it found that there was no good cause to extend the time to file the TCPA motion to dismiss. On a showing of good cause, the trial court may extend the time to file a motion to dismiss under the TCPA. Civ. Prac. & Rem. § 27.003(b). We review the trial court's decision to deny an extension of time to file the motion to dismiss for an abuse of discretion. *Campone v. Kline*, No. 03-16-00854-CV, 2018 WL 3652231, at *6 (Tex. App.—Austin Aug. 2,

16

2018, no pet.) (mem. op.); *see also* TEX. GOV'T CODE ANN. § 311.016(1) (West 2013) (Generally, the use of the word "may" in a statute "creates discretionary authority or grants permission or a power."). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

There is limited authority on what constitutes "good cause" to extend the time to file a TCPA motion to dismiss. *See Campone*, 2018 WL 3652231, at *6 (concluding, based on specific facts of case, that defendant failed to show good cause for not seeking dismissal within sixty days of being sued). However, in other contexts, the supreme court has held that "[g]ood cause is established by showing the failure involved was an accident or mistake, not intentional or the result of conscious indifference." *Wheeler v. Green*, 157 S.W.3d 439, 442 (Tex. 2005) (per curiam); *see also Morin v. Law Office of Kleinhans Gruber, PLLC*, No. 03-15-00174-CV, 2015 WL 4999045, at *3 (Tex. App.—Austin Aug. 21, 2015, no pet.) (mem. op.) (applying definition of "good cause" from *Wheeler* in context of movant's failure to timely set a TCPA motion to dismiss for hearing).

Appellants contend that they established good cause to extend the time to file the motion to dismiss "because of the early status of this case and the ever-evolving nature of [Appellees'] claims." Appellants assert that the focus of the good-cause analysis should depend on whether the motion was filed late in the case for purposes of delay or was simply an effort by the defendant to invoke the stated policy of the TCPA to provide a mechanism for the early dismissal of a meritless action that attacks the defendant's constitutional rights. Appellants specifically argue that their failure to timely file the TCPA motion was not intended to delay the proceedings because the Rule 91a motion to dismiss was the proper procedural vehicle to attack a petition that failed to articulate a claim with any basis in fact or law and because

17

they timely sought dismissal under the TCPA after Appellees filed the second amended petition that alleged taxpayer fraud.

Appellants were served with the original petition on August 29, 2018. In the original petition, Appellees directed requests for disclosure and requests for production of documents to both Appellants and the Appraisal District. On October 9, 2018, Appellants filed a Rule 91a motion to dismiss. At some point, Appellants also filed a motion to stay discovery[3] as well as a plea to the trial court's jurisdiction.[4] Finally, Appellants filed the TCPA motion to dismiss on December 17, 2018, which stayed all discovery in the case. *See* CIV. PRAC. & REM. § 27.003(c). Appellants also opposed Appellees' request for limited discovery pursuant to Section 27.006(b). The trial court did not hold a hearing on Appellants' TCPA motion to dismiss until March 4, 2019, over six months after Appellants were served with the original petition.

A litigant clearly has the right to make the litigation choices that it deems most appropriate, but those choices have consequences. In this case, Appellants chose to initially file a Rule 91a motion to dismiss and did not file a TCPA motion to dismiss within the statutory deadline. However, the dismissal procedure in Rule 91a "is in addition to, and does not supersede or affect, other procedures that authorize dismissal." TEX. R. CIV. P. 91a.9. Further, we are aware of no authority that precluded Appellants from simultaneously filing special exceptions to require Appellees to plead with greater specificity, filing a Rule 91a motion to dismiss, and filing a TCPA motion to dismiss. *See Lipper v. Haynes*, No. 01-19-00055-CV, 2019 WL 3558999, at *1 (Tex. App.—Houston [1st Dist.] Aug. 6, 2019, no pet.) (mem.

---

[3]Appellants' motion to stay discovery is not in the appellate record. However, Appellees' response to the motion was filed on November 13, 2018.

[4]Appellants' plea to the jurisdiction is not in the appellate record. During the hearing on the TCPA motion to dismiss, the trial court stated that it had previously ruled on the plea.

op.) (considering appeal of order that denied hybrid motion to dismiss under TCPA and Rule 91a); *Montoya v. San Angelo Cmty. Med. Ctr.*, No. 03-16-00510-CV, 2018 WL 2437508, at *1 (Tex. App.—Austin May 31, 2018, pet. denied) (mem. op.) (considering appeal of order that granted motion to dismiss pursuant to Rule 91a and the TCPA). Appellants' intentional choice to proceed with serial motions, rather than expeditiously seeking all relief to which they might have been entitled, caused significant delay in the resolution of the case.

We stress that each case is different and must be evaluated on its own facts and that a decision to delay filing a TCPA motion to dismiss will not always preclude a finding of good cause under the statute. However, on this record, we hold that the trial court did not abuse its discretion when it determined that Appellants failed to establish good cause to extend the time to file the TCPA motion to dismiss. We overrule Appellants' second issue.

*This Court's Ruling*

We affirm the trial court's order denying Appellants' motion to dismiss.

JOHN M. BAILEY
CHIEF JUSTICE

November 7, 2019

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[5]

Willson, J., not participating.

---

[5]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.